### In re MUNGER VEHICLE TIRE CO.

(Circuit Court of Appeals, Second Circuit. January 7, 1908.)

#### No. 74.

**1. Courts—Rules of Decision—State Statutes—Corporations — Dissolution.**

Where state statutes regulating the dissolution of corporations have been construed by the highest court of such state, the construction will be adopted by the federal courts in dealing with a corporation subject to such laws.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 13, Courts, § 957.]

**2. Bankruptcy—Dissolved Corporation.**

Under P. L. N. J. 1884, p. 236, § 7 (P. L. 1896, p. 319), providing for proclamation against New Jersey corporations, delinquent for taxes, prohibiting them from further exercising corporate powers, construed by the New Jersey Court of Errors and Appeals not to prohibit the use of such powers for the purpose of winding up the concern and settling its affairs, a proclaimed corporation is not so far destroyed as to prevent an adjudication in bankruptcy against it under P. L. N. J. 1896, p. 295, § 53, declaring that all corporations shall be continued bodies corporate for the purpose of prosecuting or defending suits and of enabling them to settle and close their affairs, or dispose of their property and divide their capital, etc.

**3. Same—Appearance by Attorney.**

Where a New Jersey corporation had been declared dissolved for failure to pay taxes in that state, it had power to appear by attorney in bankruptcy proceedings against it.

4. SAME—PLACE OF PROCEEDINGS.
        Where a New Jersey corporation, having been proclaimed against in
    that state for nonpayment of taxes, maintained its principal office in New
    York City, bankruptcy proceedings were properly instituted against it in
    New York.

Appeal from, and Petition for Revision of Proceedings of, the District Court of the United States for the Southern District of New York.

This cause comes here upon an appeal and petition to review (consolidated by order of this court) an order and decree denying petitioner's motion to dismiss a petition in involuntary bankruptcy against the Munger Company, and an adjudication of bankruptcy thereon. The petitioner, Charles A. White, is a creditor of the bankrupt in the sum of $50.

The following is the opinion of Hough, District Judge, in the District Court:

This is a very interesting proceeding in more ways than one. The party who moves to vacate is a creditor in the sum of $50, who has not proved his claim. His own personal interest in this matter must be microscopic. The moving papers largely consist of exemplifications of the New Jersey proceedings of January, 1907, and of certain laws of that state, and most of the exemplifications are dated on December 8, 1905, or upwards of a year prior to the filing of the petition in bankruptcy herein. Evidently somebody had an interest in watching and making a record of the negligence or misfortune of the Munger Vehicle Company. The trustee declares that the only asset of the bankrupt consists of a cause of action which will be barred in a few weeks by the statute of limitations. On examining the schedules it appears that the only asset therein revealed is a cause of action against the Rubber Goods Manufacturing Company for a large sum of money. Obviously, if this proceeding in bankruptcy is utterly wiped out on jurisdictional grounds, a condition of confusion will ensue very detrimental to the interests of the creditors of the Munger Vehicle Company, and highly beneficial to the person against whom the cause of action exists, and who (it is impossible to resist a suspicion) may be the same person who took such precautions with regard to procuring exemplifications of the New Jersey proclamation in December, 1905. I therefore doubt the good faith of Mr. Charles A. White.

 . If, however, there was no corporation when a petition herein was filed on January 23, 1907, it necessarily follows that there could be no adjudication. The proceedings under the New Jersey act of 1884 must be read in the light of chapter 130, p. 319, P. L. 1900, which is an amendment to the act of 1884, in force at the time of the proclamation against the Munger Company. Neither the act of 1884 nor any supplement thereto declares what shall become of the property which the delinquent corporation may have had at or after the date of such proclamation. Certainly something must be done with that property, and it is equally clear that proceedings may be just as necessary to collect assets of a corporation proclaimed for taxes as in the case of any other moribund incorporated concern. Evidently the executive of New Jersey feels this, for his proclamation of January 3, 1905, is said to declare "null and void certain charters of incorporations for unpaid taxes of 1902, under chapter 187, p. 319, P. L. 1896, and chapter 130, p. 319, P. L. 1900." Chapter 185, p. 277, P. L. 1896, is the general corporation act passed subsequent to the act of 1884, and declares (section 53) that all corporations, "whether they expire by their own limitation or be annulled by Legislature or otherwise dissolved," shall be continued bodies corporate for certain purposes. It appears by affidavits herein that for a long time prior to 1905 the Munger Company had been "inactive."

Upon the whole I have no doubt that under the statutes referred to by the moving papers the Munger Company continued to be a species of body cor-

porate, capable of being proceeded against and of certain forms of corporate activity. The situation is not different from that shown in Re Storck Lumber Company (D. C.) 8 Am. Bankr. R. 87, 114 Fed. 360. It there appeared that prior to the filing of the petition in bankruptcy proceedings had been taken under the statutes of Maryland which resulted in a decree of the court of competent jurisdiction "that the corporation was dissolved and that it be deemed to have surrendered its corporate rights, privileges and franchises." Nevertheless the adjudication in bankruptcy was sustained. In this opinion I concur. As long as there is a legal entity, capable of owing money, and of collecting money, and of paying debts with that money, something exists capable of being adjudicated a bankrupt, if otherwise entitled. If a legal entity is capable of being adjudicated a bankrupt, it is necessarily capable of committing an act of bankruptcy.

The other defects in the proceedings alleged in the moving papers are not jurisdictional, and upon the motion of Mr. White at all events are not worthy of further consideration.

The motion is denied.

Hollander & Bernheimer (M. J. Kohler, of counsel), for petitioner.

G. H. Montague, James F. Egan, and William A. Evans, for respondent.

Before LACOMBE, COXE, and NOYES, Circuit Judges.

PER CURIAM. The facts shown by the record are these: The company was incorporated under the laws of New Jersey for the manufacture and sale of rubber tires December 2, 1899, and thereafter began said manufacture in certain mills owned or controlled by the Rubber Goods Manufacturing Company. On or about November 30, 1901, it ceased the manufacture and sale of such goods and became inactive. Thereafter the office in which the books of the Munger Company were kept, and the office from which letters were written, in which meetings of the directors and stockholders were held, and where outstanding accounts were collected and paid, was the office of its secretary and treasurer at 46 Cedar street, in the city of New York. Such office was subsequently, about January, 1905, transferred to that of one of the directors, No. 5 Nassau street, and again, on or prior to July 1, 1906, to that of its counsel, No. 76 William street, in said city. On January 3, 1905, the Governor of New Jersey, under the statutes of that state, proclaimed that the charter of the Munger Company was void because it was in default in payment of taxes assessed against it for the year 1902. In the summer of 1906 Louis De F. Munger, one of the directors, pressed for payment of a claim which he asserted against the corporation, and brought an action therefor in September, 1906. Thereupon the board of directors unanimously passed the following resolution:

"Resolved, that Lewis Earle [one of the directors] be directed to confer with Mr. Munger, or his attorney, and to state to them the situation of said company, and, in the event that Mr. Munger continues to press his claim, that Mr. Earle be directed to employ competent counsel to represent said company in such action and any subsequent proceedings which Mr. Munger may take against said company, and that Mr. Earle be, and hereby is, given full power to take any and all steps therein as may, after consultation with said counsel, seem advisable for the best interest of said company."

Thereupon said Earle, on behalf of the company and acting upon the advice of counsel, made an offer of judgment to Munger for an

amount less than the amount claimed in his complaint, which offer was accepted, and judgment entered for $11,881.95 on October 30, 1906. Subsequently on December 18, 1906, said Earle in pursuance of the above resolution signed an instrument in writing stating that the company was insolvent, was unable to pay its debts, and was willing to be adjudicated a bankrupt for that reason. Thereupon Munger and two other creditors filed a petition for adjudication in involuntary bankruptcy, which was served upon the counsel employed under resolution of October 11th. Said counsel entered an appearance. On October 20, 1907, another resolution was adopted by the board of directors, which, after recital of the acts of Earle and the counsel, resolved that they "be and hereby are in all things ratified and confirmed," and counsel continued as attorney for the company. On February 26, 1907, the company was adjudicated a bankrupt. The opinion of the district judge is reported herewith, and we fully concur in the same. It will be sufficient to refer only to such assignments of error as were presented on the argument.

It will not be necessary to review the numerous authorities cited by appellant in support of his contention that subsequent to the proclamation the company was defunct, and, 1..e a deceased person, incapable of being adjudged a bankrupt. We are dealing with a New Jersey corporation, whose status is regulated by New Jersey statutes, and when such statutes have been construed by the highest court of New Jersey the federal courts will adopt the same construction. The proclamation was issued under an act further supplementary to an act of April 18, 1884, which further supplementary act was approved March 23, 1900 (chapter 130, p. 319, P. L. 1900). The history of this legislation is briefly as follows:

Chapter 159, p. 232, P. L. 1884, provided for the imposition of state taxes upon certain corporations and for the collection thereof. It enacted (section 7) that, in addition to other remedies for the collection of such tax, the Attorney General might apply to the court for an injunction against the further exercise of any franchise by the delinquent corporation, but contained no provision for the forfeiture of its charter by proclamation. Chapter 187, p. 319, P. L. 1896, as a "further supplement" to this act of 1884 (which is misprinted 1894 in the title), provided (section 1) that, if any corporation shall for two consecutive years neglect or refuse to pay any state tax, "the charter of such corporation shall be void and all powers conferred by law upon such corporation are hereby declared inoperative and void." It also provided in section 2 that on or before the 1st day of May in each year the Comptroller shall present to the Governor a list of all such delinquent corporations, and the Governor shall forthwith issue his "proclamation declaring under this act of the Legislature that the charters of these corporations are repealed. In the same year (1896) there was passed a general act (chapter 185, p. 277) concerning corporations, which contained the following:

"Sec. 53. All corporations, whether they expire by their own limitation or be annulled by the Legislature or otherwise dissolved, shall be continued bodies corporate for the purpose of prosecuting and defending suits by or against them, and of enabling them to settle and close their affairs, to dis-

pose of and convey their property and to divide their capital, but not for the purpose of continuing the business for which they were established."

In 1900 the Legislature amended the second section of the prior act (chapter 187, p. 319, P. L. 1896) merely by substituting the "first Monday in January" for the "first day of May" (chapter 130, p. 319, P. L. 1900).

With all these statutes before it (except the last one, which changed the date from May to November), the Court of Errors and Appeals held that these acts, being parts of a legislative scheme respecting corporations and being in pari materia, are to be construed together, and that the prohibition against the use of corporate powers of proclaimed defaulted corporations did not extend to their use in winding up and settling the affairs of such corporations. And that court reversed a decision of the Vice Chancellor and remitted the cause, with instructions to appoint a receiver on the prayer of creditors of the proclaimed corporation. American Surety Co. v. Great White Spirit Co., 58 N. J. Eq. 526, 43 Atl. 579.

Upon such construction the proclamation of default, etc., in the case at bar, did not work such a destruction of the corporation that it could not be adjudicated a bankrupt. The language of the section quoted (section 53) seems plainly to warrant the taking of such action as will secure the intervention of the bankruptcy court. A proceeding in involuntary bankruptcy may fairly be considered a suit to settle and close up the affairs of the bankrupt and dispose of its property.

The suggestions that the corporation could not appear in bankruptcy proceedings by an attorney and that the proceeding was not properly instituted in New York City seem to be without merit.

The order of the District Court is affirmed.