HARRIS-WOODBURY LUMBER CO. v. COFFIN et al.

(Circuit Court, W. D. North Carolina, at Asheville.   April 28, 1910.)

1. QUIETING TITLE (§ 44*)—ACTIONS—BURDEN OF PROOF OF TITLE.
    In suits in equity to quiet title or remove a cloud, the burden is upon the complainant to show that he is the lawful owner of the premises involved in the controversy.
    [Ed. Note.—For other cases, see Quieting Title, Cent. Dig. § 89; Dec. Dig. § 44.*]

2. CORPORATIONS (§ 630*)—EFFECT OF DISSOLUTION—NEW JERSEY STATUTE.
    A New Jersey corporation, whose charter has been annulled by proclamation of the Governor for nonpayment of taxes, may thereafter sue or be sued in its corporate name in relation to any matter necessary or proper to the orderly settlement of its affairs, by virtue of Corporation Act N. J. (P. L. 1896, p. 295) §§ 53–55, which provide that all dissolved corporations shall be continued bodies corporate for the purpose of prosecuting and defending suits and of enabling them to settle and close their

affairs, and that the directors, who are constituted trustees for such purpose, may sue or be sued by the corporate name.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 2482–2486; Dec. Dig. § 630.*]

3. CORPORATIONS (§ 691*)—POWERS—LAW GOVERNING. ·

The powers of a corporation, although doing business in a state other than that of its creation, are governed by the law of its domicile, and its power to sue or be sued after its former dissolution is determined by such law, and not by that of the state in which the suit is brought.

[Ed. Note.—For other cases, see Corporations, Dec. Dig. § 691.*]

In Equity. Suit by the Harris-Woodbury Lumber Company against E. G. Coffin and D. Samuel White. On exceptions to report of special master. Exceptions overruled, and decree for complainant.

Merrimon & Merrimon and C. C. Cowan, for complainant.

R. C. Strudwick, Norwood & Norwood, Wm. P. Bynum, Jr., and Justice & Broadhurst, for defendants.

PRITCHARD, Circuit Judge. This is a bill in equity filed by the complainant for the purpose of removing a cloud upon its title. The complainant alleges that it is the owner in fee and in actual possession of a tract of mountain land containing 78,000 acres, and deraigns its title, showing grant from the state and various mesne conveyances down to a deed to the Foreign Hardwood Log Company in 1894, and then deed from the said company to the Tuckaseigee Timber Company in 1895, and deed from the Tuckaseigee Timber Company to the Whittier Lumber Company, a New Jersey corporation, in 1896, and deed to complainant in 1906 by a commissioner appointed by this court to sell said land pursuant to a decree rendered in a proceeding instituted in this court in 1906 to foreclose a mortgage executed by the Whittier Lumber Company. The complainant further alleges that in 1904 E. G. Coffin and F. M. McDonald, trading under the firm name of Coffin & McDonald, instituted a suit in the superior court of Swain county, N. C., against one Charles R. Flint, and caused an attachment to issue in their favor from said court against said Flint, and to be levied against said lands, pretending that he was the owner thereof, or had an interest therein, which suit was removed to this court, and in 1907 a judgment was rendered therein for $85,000 in favor of Coffin & McDonald, and that Coffin & McDonald, claiming that said judgment was a lien upon said lands because of said attachment, procured a writ of execution to issue from this court, and by virtue thereof the marshal sold at public auction on May 4, 1908, all the right, title, and interest of said Charles R. Flint in and to said lands to said E. G. Coffin, the last and highest bidder, for $100, and that said Coffin assigned his bid to the defendant D. Samuel White, to whom the marshal made a deed, which was filed and recorded in Swain county, N. C., where the land is situated. The complainant further alleges that the defendants, E. G. Coffin and D. Samuel White, claimed to be the owners of said lands, or to have an interest therein, because of said deed, and had repeatedly threatened to enter upon said lands under their purported claim and remove the timber therefrom, and to otherwise injure and

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

molest complainant, and the complainant prays for a decree quieting its title, canceling said deed to the defendant D. Samuel White, and perpetually enjoining the defendants from asserting or claiming any interest or estate in said lands by reason thereof.

The defendants in their answer admitted that the title had been properly deraigned by the complainant down to the deed to the Foreign Hardwood Log Company, but denied that the complainant was the owner of said lands, or had any right to the possession thereof. They allege: That Charles R. Flint furnished the money for the purchase of said lands, and had the title made to the Foreign Hardwood Log Company, a "dummy" corporation under his control, and that said corporation held the title in trust for Charles R. Flint, as resultant beneficiary and owner of the equitable estate therein, and that afterward, for the purpose of cheating and defrauding said E. G. Coffin and F. M. McDonald, Charles R. Flint caused the Foreign Hardwood Log Company to make a deed for said lands to the Tuckaseigee Timber Company, another "dummy" corporation controlled by him; but the defendants denied that any title passed by such deed, both because of its fraudulent purpose and because the Tuckaseigee Timber Company was never lawfully organized and was never capable of owning real estate or holding title thereto. That subsequently said Flint, still designing to cheat and defraud said Coffin and McDonald and his other creditors, caused the Tuckaseigee Timber Company to make a deed for said lands to another "dummy" corporation, the Whittier Lumber Company, formed by employés under his control, but that no title passed, because the Tuckaseigee Timber Company had no power to receive or convey the title, and because the Whittier Lumber Company was never properly organized, and never became a legal entity capable of holding title to real estate; but, if the Whittier Lumber Company did acquire any title by said conveyances, it held the same for the benefit of Coffin and McDonald and other creditors of Flint, because said conveyances were made for the purpose of cheating and defrauding said creditors. That the Whittier Lumber Company, or those who controlled it, for Flint, fraudulently pretended to execute a mortgage of said lands as security for an alleged issue of bonds, but that said bond issue was fraudulent, without consideration, and done to enable Flint to further incumber the title for the purpose of cheating his creditors, and said lands never passed into the hands of bona fide purchasers. That the complainant, with full knowledge of all these things, acquired possession of said lands, and fraudulently procured the institution of the suit to foreclose the mortgage executed by the Whittier Lumber Company, and misled the court by collusion with the Whittier Lumber Company, and procured a decree ordering sale of the lands, and at such sale pretended to become the purchaser of said lands, using said bonds in making payment. That there was an understanding with complainant and Flint whereby the actual payment for said lands depended upon the complainant's establishing title thereto by the conveyances set out in the complaint, and that this proceeding by the complainant is in furtherance of said nefarious scheme, and that complainant is not entitled to the aid of a court of equity in carrying it out. That the defendants were the real owners of said lands, having

acquired the title by the sale under the judgment against Charles R. Flint, who was the real owner; the title having been acquired and held in trust for him.

The matter was referred by consent to a special master, to hear and take the evidence and state his findings of fact and conclusions of law. After taking the testimony and hearing arguments thereon by counsel for the parties, the master filed his report on September 7, 1909, in which he found as facts, among other things: That the purchase money for the land when it was conveyed to the Foreign Hardwood Log Company was not furnished by Charles R. Flint, and that the title to the said lands was duly conveyed by the Hardwood Log Company to the Tuckaseigee Timber Company, and by the latter company to the Whittier Lumber Company, and that the Whittier Lumber Company duly issued its bonds and duly executed the mortgage on said lands as security therefor, and that all these things were done regularly and without fraudulent intent on the part of Charles R. Flint to hinder and delay or cheat and defraud E. G. Coffin and F. M. McDonald, or any other creditors.. That the bonds by the Whittier Lumber Company, after having become widely scattered in the regular course of business, were assembled for and bought by Charles J. Harris, one of the incorporators of the complainant, the Harris-Woodbury Lumber Company, and that said Harris became the bona fide purchaser of said bonds for a valuable consideration, without collusion, conspiracy, or fraud on his part with Charles R. Flint or any other person, and without any knowledge or notice of any of the things done by the corporations which held the title to said lands, or by those interested in said corporations, except such as was given by the public records, and that there was not sufficient evidence in any of such records which had been introduced to put Charles J. Harris or any prudent man on notice of any fraud which may have been attempted or perpetrated by Charles R. Flint, or by said corporations which held the title to said lands, or by any of those interested in said corporations. That the suit to foreclose the mortgage executed by the Whittier Lumber Company was duly instituted in this court about April 16, 1906, and that after the bill was filed the Whittier Lumber Company, the defendant in that suit, in due time filed its duly verified answer, in its corporate name and under its corporate seal, by its president, confessing the allegations of said bill, and also appeared by attorney, and that a regular decree of foreclosure of said mortgage was made by this court on March 26, 1906, directing that the lands described in said mortgage, and which are the lands described in the bill of complaint filed in this suit, be sold at public auction, after due advertisement, and appointing a commissioner to conduct such sale. That the commissioner did sell said lands in pursuance to said decree and as therein directed, and that Charles J. Harris became the last and highest bidder therefor at the price of $449,024.05, and duly assigned his bid to the complainant herein, the Harris-Woodbury Lumber Company. That said sale was duly reported to and confirmed by this court, and the commissioner was ordered to make deed conveying the title in fee for said lands to the Harris-Woodbury Lumber Company, which was done, and that there was no collusion or fraud in any of these proceedings.

The special master also found as a fact that on May 2, 1900, the Governor of the state of New Jersey, in which state the Whittier Lumber Company had been incorporated, duly issued his proclamation declaring inoperative and void all corporate powers conferred by law upon the Whittier Lumber Company, because of its failure to make the required reports and to pay the taxes assessed against it by said state of New Jersey for the year 1897. The special master further found as a fact that the laws of the state of New Jersey which were in effect on May 2, 1900, and have been in effect ever since, provide as follows:

"53. Corporate Existence Continues.—All corporations, whether they expire by their own limitation or be annulled by the Legislature or otherwise dissolved, shall be continued bodies corporate for the purpose of prosecuting and defending suits by or against them, and of enabling them to settle and close their affairs, to dispose of and convey their property and to divide their capital, but not for the purpose of continuing the business for which they were established.

"54. Directors—Trustees on Dissolution.—Upon the dissolution in any manner of any corporation the directors shall be trustees thereof, with full power to settle the affairs, collect the outstanding debts, sell and convey the property and divide the moneys and other property among the stockholders, after paying its debts, as far as such moneys and property shall enable them; they shall have power to meet and act under the by-laws of the corporation and, under regulations to be made by a majority of said trustees, to prescribe the terms and conditions of the sale of such property, and may sell all or any part for cash, or partly on credit, or take mortgages and bonds for part of the purchase price for all or any part of said property.

"55. Powers and Liabilities of Such Trustees.—The directors, constituted trustees as aforesaid, shall have authority to sue for and recover the aforesaid debts and property, by the name of the corporation, and shall be suable by the same name, or in their own names or individual capacities, for the debts owing by such corporation, and shall be jointly and severally responsible for such debts, to the amount of the moneys and property of the corporation which shall come to their hands or possession as such trustees."

See P. L. 1896, p. 295.

The special master also found as a fact that E. G. Coffin and F. M. McDonald recovered a judgment for $85,000 in 1907 against Charles R. Flint in the suit instituted by them in 1904, and that all the right, title, and interest of said Flint in and to said lands was sold by the marshal of this court under execution issued on said judgment to said E. G. Coffin for $100, and that said Coffin assigned his bid to the other defendant, D. Samuel White, to whom the marshal made a deed on June 1, 1908, conveying to said D. Samuel White all the right, title, interest, and claim which said Charles R. Flint had in and to said lands, which deed was duly acknowledged and recorded in Swain county, N. C., on June 2, 1908. The special master also found that the Whittier Lumber Company, in its corporate name and by its president and under its corporate seal, executed a quitclaim deed whereby it conveyed all its right, title, and interest in said lands to the Harris-Woodbury Lumber Company on September 5, 1906.

The special master reported as his conclusions of law that there never was any resulting trust upon the said lands, or any title thereto, in favor of Charles R. Flint, and that said Flint never at any time owned said lands, or held title thereto, or had any interest therein which was subject to attachment or could be sold under execution, and that the Whittier Lumber Company was an existing corporation in

1906 for the purposes of prosecuting and defending suits, conveying its property, and winding up its affairs, and that it could appear, and properly did appear and answer, in its corporate name, by its officers, in the suit brought in 1906 to foreclose the mortgage executed by it, and that the complainant, Harris-Woodbury Lumber Company, is the owner and seised in fee and actually possessed of the lands described in the bill of complaint, and entitled to the quiet and peaceable possession thereof without cloud or adverse claim, and that the marshal's said deed to D. Samuel White was a cloud upon complainant's title, which should be removed, and that the complainant was entitled to the injunction prayed.

This being a reference by consent, the special master's findings of fact are conclusive. The defendants excepted to the special master's report, and strenuously insisted that he had erred in his conclusions of law, contending that the foreclosure suit against the Whittier Lumber Company was void, first, because that corporation had been dissolved by the proclamation of the Governor of New Jersey on May 2, 1900, and said foreclosure suit. was not instituted until April 16, 1906, and, being instituted in the Circuit Court of the United States for the Western District of North Carolina, it is governed by the North Carolina statutes, which provide that dissolved corporations are continued bodies corporate for the term of three years after dissolution for the purpose of prosecuting and defending actions by or against them and to wind up their affairs (Revisal N. C. 1908, § 1200), and not the New Jersey statute, in which there is no time limit; second, even if the New Jersey statute governed, the foreclosure suit was brought against the Whittier Lumber Company in its corporate capacity, whereas it should have been brought against the directors as trustees, as provided by section 54 of the New Jersey statute, quoted by the special master in his findings of fact; and, third, that the deed to the Harris-Woodbury Lumber Company, made on September 5, 1906,. by the Whittier Lumber Company in its corporate capacity, was void, because it should have been made, even if the New Jersey, and not the North Carolina, statute governs, by the directors of the dissolved Whittier Lumber Company as trustees—and, therefore, the Harris-Woodbury Lumber Company had no title, and, as it must establish its own title to entitle it to the aid of a court of equity to remove a cloud therefrom, it therefore has no standing in this court, and the bill should be dismissed.

In suits of this character, as well as in actions in ejectment, the burden is upon the complainant to show that he is the lawful owner of the premises involved in the controversy. In this instance the complainant, both by pleading and proof, has made out what constitutes a prima facie title in fee simple to the lands involved. However, as appears in the statement of the case, it is insisted by counsel for the defendants that the title under which the complainant holds these lands is defective, and is not sufficient to convey the lands described therein.

I shall now consider the questions which arise at the threshold of this controversy, to wit: (a) Whether the foreclosure proceeding, by virtue of which the complainant became the owner of these lands, was void on account of the fact that the Whittier Lumber Company, as a corporation, had been dissolved by the proclamation of the Governor

of New Jersey prior to the date of the institution of the said foreclosure suit; (b) whether, under these circumstances, the court is governed by the North Carolina statute, which provides that dissolved corporations are continued as bodies corporate for three years after dissolution for the purpose only of prosecuting cases by or against them and for the transaction of other business incidental to the winding up of their affairs; and (c) whether, if the New Jersey statute governs, the foreclosure suit should not have been brought against the directors as trustees of the Whittier Lumber Company, under section 54 of the New Jersey statute, to which reference is made by the special master. There are other questions, incidentally arising, which I shall discuss in their logical order.

Section 53 of the New Jersey statute for the year 1896, reads as follows:

"53. Corporate Existence Continues.—All corporations, whether they expire by their own limitation or be annulled by the Legislature or otherwise dissolved, shall be continued bodies corporate for the purpose of prosecuting and defending suits by or against them, and of enabling them to settle and close their affairs, to dispose of and convey their property and to divide their capital, but not for the purpose of continuing the business for which they were established."

Section 55 provides that the directors shall be constituted trustees, and that they shall have authority to sue for and recover debts and property by the name of the corporation, and "shall be suable by the same name, or in their own names or individual capacities. * * *" Under this provision, where a corporation is dissolved, suits may be instituted, property transferred, etc., by the trustees, in the name of the corporation, or the trustees may be sued, etc., as a body or individually, in any controversy that may arise. The section of the New Jersey statute which authorizes the Governor to issue his proclamation dissolving a corporation of that state, as well as the sections I have just cited, have been passed upon in numerous cases, in which it is held that, notwithstanding the proclamation of the Governor of New Jersey dissolving a New Jersey corporation for the nonpayment of taxes, the corporate existence of such corporation is continued for the purpose of suing and being sued, and that any suit against such corporation is properly brought against it in its corporate name. The following cases bear directly on this point: American Surety Co. et al. v. Great White Spirit Co. et al., 58 N. J. Eq. 526, 43 Atl. 579; Grey, Attorney General, v. Newark Plank Road Co., 65 N. J. Law, 603, 48 Atl. 557; Camp et al. v. Taylor et al. (N. J.) 19 Atl. 968, and cases there cited; White Mountain Paper Co. v. Morse & Co., 62 C. C. A. 369, 127 Fed. 643; In re Munger Vehicle Tire Co., 159 Fed. 901, 905, 87 C. C. A. 81; Folger et al. v. Chase et al., 18 Pick. (Mass.) 63; Hawkins v. Glenn, 131 U. S. 330, 331, 9 Sup. Ct. 739, 33 L. Ed. 184; and Glenn v. Liggett, 135 U. S. 542, 10 Sup. Ct. 867, 34 L. Ed. 262.

The case of American Surety Co. v. Great White Spirit Co. et al., supra, was a suit instituted upon a bill filed by the creditors of the Great White Spirit Company, a corporation of New Jersey, praying that a receiver be appointed. Upon the return to the rule, the matter was heard by the Vice Chancellor upon the bill and accompanying affi-

davits and the affidavits presented by respondents. In accordance with his advice the application for a receiver was refused, and the rule to show cause was discharged. The case was then carried to the Court of Errors and Appeals of New Jersey. That court, in passing upon the exact question involved here, said:

"The proclamation of the Governor heretofore stated conformed to the requirements of this act. This act and the corporation act of 1896 are plainly parts of a legislative scheme respecting corporations, and, being in pari materia, are to be construed together. So construed, I think it obvious that the prohibition against the use of corporate powers of proclaimed defaulted corporations did not extend to their use in winding up and settling the affairs of such corporations under the conditions contained in sections 53–60, inclusive, of the corporation act of 1896. This was the view taken by the learned Vice Chancellor in this case, and he probably held the respondent company, after default and proclamation, to be within the provisions of those sections. By those provisions the directors of a corporation dissolved in any manner are made trustees thereof, with full powers to settle up its affairs."

The New Jersey court, in the case just quoted, held that the proclamation of dissolution had the effect only of dissolving the corporate capacity to prevent the transaction of the business for which the company was chartered, but that, while this is true, nevertheless, the corporate existence continued for the purposes of suing and being sued, disposing of its corporate property, paying its debts, and any and all other things that were necessary in order to promote an orderly disposition of its affairs, and that the rights of creditors, stockholders, and other parties interested should be finally adjusted in accordance with the principles controlling in cases where a corporation may for any reason be dissolved. This is an exceedingly wise provision of the law, as anything short of it would result in interminable confusion, and, in many instances, work a great hardship and injustice to those interested as stockholders, creditors, or otherwise.

In the case of Grey, Attorney General, v. Newark Plank Road Co., supra, the court again passed upon this question. There the Attorney General had instituted quo warranto proceedings to dissolve the corporation on the ground that its charter had expired. The court below entered an order declaring that it was not entitled to further corporate existence. The case was then carried to the Court of Appeals, and that court reversed the court below, saying:

"We concur in the opinion of the Supreme Court, but think that the judgment entered was not thereby warranted. In its concluding sentence the opinion declares that the defendant company will still continue to be a body corporate for the purposes in section 59 of the act concerning corporations specified. The reference is to section 59 of the act of April 7, 1875, now section 53 of the act of 1896 (P., L. 1896, p. 277), which ordains 'that all corporations, whether they expire by their own limitations or be annulled by the Legislature or otherwise dissolved, shall be continued bodies corporate for the purpose of prosecuting or defending suits by or against them, and of enabling them to settle and close their affairs, to dispose of and convey their property and to divide their capital, but not for the purpose of continuing the business for which they were established.' In the face of this statute the judgment entered is 'that the said Newark Plank Road Company be, and they hereby are, ousted from exercising and enjoying the franchise of a body politic and corporate by the name and style of the Newark Plank Road Company.' This judgment should be reversed, and in its stead should be entered a judgment that the corporate existence of said company has terminated, ex-

cept so far as it is continued by the said section, and that the company be ousted from the exercise and enjoyment of all franchises, except such as are thereby conferred."

In this case it is held that under the New Jersey statute the corporate existence is continued, for the purposes to which I have referred, until the affairs of the corporation are finally settled and wound up. The only distinction between that case and the case at bar is that there it was sought by quo warranto proceedings to secure the dissolution of the corporation, and in this instance the corporation was dissolved by proclamation of the Governor of New Jersey. The facts involved in this proceeding are substantially the same as those in that case.

The case of Camp et al. v. Taylor et al., supra, was an action instituted by the stockholders of a dissolved corporation against its directors for the mismanagement of its affairs. Among other things the question was raised as to whether the corporation should be made a party to the suit; and that court, in a well-considered opinion, held that the corporation should be made a party, inasmuch as the corporation was endowed, by section 59, p. 187, of the Revision of New Jersey, with power to perform certain duties, among which were that it was capable of suing and being sued for the purpose of winding up and settling its affairs. The court, in discussing this point, said:

"Although it appears by the appeal that the said corporation was dissolved, and the certificate of such dissolution filed in the office of the Secretary of State, yet I think there is no escaping the conclusion that the corporation, as such, should be made a party to this suit. The fifty-ninth section of the corporation act expressly provides that, in cases of dissolution, such corporations shall be deemed to continue their existence for the purpose of suing and being sued, in order to wind up the business of such corporation. See Revision, p. 187, § 59. And such seems, also, to be not only the plain reason of the case, but the conclusion to which most eminent judges have come in the consideration of this very question, as will appear by the following references: Wilson v. Bellows, 30 N. J. Eq. 282, 284; Ackerman v. Halsey, 37 N. J. Eq. 356; Conway v. Halsey, 44 N. J. Law, 462; Davenport v. Dows, 18 Wall. 626 [21 L. Ed. 938] (decided in 1874); Robinson v. Smith, 3 Paige [N. Y.] 222 [24 Am. Dec. 212]; Cunningham v. Pell, 5 Paige [N. Y.] 607; Hersey v. Veazie. 24 Me. 9 [41 Am. Dec. 364]; Insurance Co. v. Sebring, 5 Rich. Eq. [S. C.] 342; Railroad Co. v. Nolan, 48 N. Y. 513; Bagshaw v. Railroad Co., 7 Hare, 114-131; Foster v. Bank, 16 Mass. 245 [8 Am. Dec. 135]; Taylor v. Holmes, 127 U. S. 489, 8 Sup. Ct. 1192 [32 L. Ed. 179]; 1 Daniell, Ch. Pr. (5th Ed.) 368; Gray v. Steamship Co., 3 Hun [N. Y.] 391, 5 Thomp. & C. 229; Luling v. Insurance Co., 30 How. Prac. [N. Y.] 75; Butts v. Wood, 38 Barb. [N. Y.] 189; Thornton v. Railroad Co., 123 Mass. 34."

From the foregoing cases it will be seen that the courts of other states, as well as the courts of the United States, have held that the sections of the New Jersey statutes to which I have referred provide that, notwithstanding the fact that the Governor has the right, by proclamation, to dissolve a corporation of that state, so as to render it incapable of performing those functions necessary to the further transaction of business in which such corporation may have been engaged, yet the corporation is still kept alive for the purpose of doing those things that are essential to the final winding up of its affairs, such as transferring property, suing, and being sued, etc. Figuratively speaking, the right hand of the corporation, by which it was enabled to carry on the business in which it was actively engaged, was paralyzed com-

pletely by the proclamation of the Governor; but its body was not affected thereby, in so far as the exercise of those functions necessary to the performance of the acts incident to closing out and winding up its affairs were concerned.

However, it is insisted by counsel for the defendants, as I have said, that these cases do not apply, and that this cause is governed by the statutes of North Carolina, which, as already stated, provide that dissolved corporations are continued as bodies corporate for a term of three years, and no longer, after dissolution, for the purposes of prosecuting and defending actions by or against them and winding up their affairs. The case of Boyd et al. v. Hankinson et al., 92 Fed. 49, 34 C. C. A. 197, decided by the Circuit Court of Appeals for this Circuit, is very much in point. In that case the corporation (as in this instance), which had forfeited its charter, was incorporated under the laws of New Jersey. Having failed to pay its New Jersey taxes, the Governor of that state issued his proclamation on the 4th of May, 1897, dissolving the corporation and declaring its charter forfeited, pursuant to the statutes of New Jersey. The Circuit Court of Appeals, in passing upon the question involved, held that the laws of New Jersey were controlling, and that the corporation's existence for certain purposes was continued. Judge Goff, in a very able and interesting opinion, in referring to the point involved, said:

"But, even if the charter was forfeited, the company, while it would not be able to continue the transaction of business, would still be authorized to close out its affairs and dispose of its property, in the interest of its creditors and stockholders. And this is true, independent of the New Jersey statute on that subject. * * *"

The case of L. Bucki & Son Lumber. Co. v. Atlantic Lumber Company, 128 Fed. 332, 63 C. C. A. 62, decided by the Circuit Court of Appeals for the Fifth Circuit (Judge Pardee rendering the opinion), is also very much in point. The learned judge in that case said:

"It is suggested that, as the New Jersey proceedings dissolved the corporation, the present suit must abate, notwithstanding section 53, because it is a personal action for malicious prosecution, and therefore cannot survive dissolution. The first answer to this is that the New Jersey proceedings did not dissolve the corporation, quoad the prosecution of suits, and that statute is controlling in the matter. * * *"

A corporation, doing business in a state other than the one wherein it is created, can only exercise such powers and functions as may be conferred upon it by its charter, and the transaction of its affairs is limited strictly to the authority granted by the state of its creation. It is only by the rule of comity that it is permitted to do business in this state at all, and, when it does so, it necessarily carries with it all the powers granted in its charter. Moreover, when a question of power in a given instance is involved, such question must be determined by the laws of its domicile, and those who may have transactions with such corporation are subject to the limitations and powers contained in its charter.

In the case of Canada Southern Ry. Co. v. Gebhard et al., 109 U. S. 527, 3 Sup. Ct. 363, 27 L. Ed. 1020, the court said:

"A corporation 'must dwell in the place of its creation, and cannot migrate to another sovereignty' (Bank of Augusta v. Earle, 13 Pet. 588 [10 L. Ed. 274]), though it may do business in all places where its charter allows and the local laws do not forbid (Railroad v. Koontz, 104 U. S. 12 [26 L. Ed. 643]). But wherever it goes for business it carries its charter, as that is the law of its existence (Relfe v. Rundel, 103 U. S. 226 [26 L. Ed. 337]), and the charter is the same abroad that it is at home. Whatever disabilities are placed upon the corporation at home it retains abroad, and whatever legislative control it is subjected to at home must be recognized and submitted to by those who deal with it elsewhere. A corporation of one country may be excluded from business in another country (Paul v. Virginia, 8 Wall. 168 [19 L. Ed. 357]); but, if admitted, it must, in the absence of legislation equivalent to making it a corporation of the latter country, be taken, both by the government and those who deal with it, as a creature of the law of its own country, and subject to all the legislative control and direction that may be properly exercised over it at the place of its creation. Such being the law, it follows that every person who deals with a foreign corporation impliedly subjects himself to such laws of the foreign government, affecting the powers and obligations of the corporation with which he voluntarily contracts, as the known and established policy of that government authorizes. To all intents and purposes he submits his contract with the corporation to such a policy of the foreign government, and whatever is done by that government in furtherance of that policy which binds those in like situation with himself, who are subjects of the government, in respect to the operation and effect of their contracts with the corporation, will necessarily bind him. He is conclusively presumed to have contracted with a view to such laws of that government, because the corporation must of necessity be controlled by them, and it has no power to contract with a view to any other laws with which they are not in entire harmony. It follows, therefore, that anything done at the legal home of the corporation, under the authority of such laws, which discharges it from liability there, discharges it everywhere."

The following cases are also very much in point: Hudson River Pulp & Paper Co. v. Warner & Co., 99 Fed. 187, 39 C. C. A. 452; Coltrane v. Templeton, 106 Fed. 375, 45 C. C. A. 328; Electric Light Co. v. Citizens' Light Co. (C. C.) 123 Fed. 592; London, etc., Bank v. Aronstein, 117 Fed. 607, 54 C. C. A. 663.

The case of Hawkins v. Glenn, 131 U. S. 319, 9 Sup. Ct. 739, 33 L. Ed. 184, was carried by appeal from the Eastern District of North Carolina to the Circuit Court of Appeals, and thence to the Supreme Court of the United States. In that case the question involved was whether the stockholders of the defendant corporation were entitled to become parties defendant on the ground that the corporation had been dissolved. In disposing of the matter the Supreme Court, among other things, said:

"In Hamilton v. Glenn [85 Va. 901, 9 S. E. 129], decided in the Court of Appeals of Virginia March 14, 1889, and not yet reported in the official series, the rejection by the circuit court of Henrico county, Va., to which the suit in the Richmond chancery court had been removed, of a petition of certain stockholders to be made parties, and for a rehearing of the cause, came under review in the Supreme Court of Appeals of Virginia, and that court, among other things, said: 'The first question raised in this court is that the appellants are entitled to be made parties to the suit of Glenn v. National Express & Transportation Company, because the relief sought is against them. The suit of Glenn v. National Express & Transportation Company is a creditors' suit against a corporation, and by the terms of its charter and the laws of this state applicable to said company it was lawfully sued as such by its corporate name, and the individual stockholders were not proper parties to such a suit; the president and directors being by their selection their representatives for this purpose. The appellants admit this as to any live and going

corporation, and claim, as the corporation is dead, that by its deed of trust it assigned to trustees and ceased to exist; that in a suit by a creditor, or by creditors generally, the suit against the corporation is in fact one not against the corporation, but against them as stockholders, and they are not represented by the company nor by the trustees. By the law of this state (Code 1873, c. 56, § 31), "when any corporation shall expire or be dissolved, or its corporate rights and privileges shall have ceased, all its works and property, and debts due to it, shall be subject to the payment of debts due by it, and then to distribution among the members according to their respective interests; and such corporation may sue and be sued as before, for the purpose of collecting debts due to it, prosecuting rights under previous contracts with it, and enforcing its liabilities, and distributing the proceeds of its works, property and debts, among those entitled thereto." By which it is provided that, notwithsanding its death, it stands, for the purpose of being sued by creditors, just as it did while live and going, and may sue and be sued as before, and that the directory has assigned to trustees alters the case only so far as to make the trustees necessary parties.'

"The section quoted from the Code of 1873 is identical with section 30 of chapter 56 of the Code of 1860; and as the corporation, notwithstanding it may have ceased the prosecution of the objects for which it was organized, could still proceed in the collection of debts, the enforcement of liabilities, and the application of its assets to the payment of its creditors, all corporate powers essential to these ends remained unimpaired. We concur in the decision to this effect of the highest tribunal of the state where the corporation dwelt, in reference to whose laws the stockholders contracted (Canada Southern Railway v. Gebhard, 109 U. S. 527 [3 Sup. Ct. 363, 27 L. Ed. 1020]), and in whose courts the creditors were obliged to seek the remedy accorded (Barclay v. Jalman, 4 Edw. Ch. [N. Y.] 123; Bank of Virginia v. Adams, 1 Parsons, Sel. Cas. 534; Patterson v. Lynde, 112 Ill. 196).

"We think it cannot be doubted that a decree against a corporation in respect to corporate matters, such as the making of an assessment in the discharge of a duty resting on the corporation, necessarily binds its members in the absence of fraud, and that this is involved in the contract created in becoming a stockholder.

"The decree of the Richmond chancery court determined the validity of the assessment, and that the lapse of time between the failure of the company and the date of the decree did not preclude relief, by creating a bar through statutes of limitation or the application of the doctrine of laches. And so it has been held in numerous cases referred to on the argument. The court may have erred in its conclusions, but its decree cannot be attacked collaterally, and, indeed, upon a direct attack, it was already been sustained by the Virginia Court of Appeals. Hamilton v. Glenn, supra."

However, it is insisted by counsel for defendants that Charles R. Flint furnished the money for the purchase of the lands involved in this controversy and caused the title to be made to the Foreign Hardwood Log Company, an alleged "dummy" corporation under his control; that the said corporation held the property in trust for him as resultant beneficiary and owner of the equitable estate therein; that afterwards, for the purpose of cheating and defrauding E. G. Coffin and F. M. McDonald, Charles R. Flint caused the Foreign Hardwood Log Company to make a deed for the said lands to the Tuckaseigee Timber Company, another alleged "dummy" corporation controlled by him, at the same time denying that any title passed by such deed, both because of its fraudulent purpose and because the Tuckaseigee Timber Company was never lawfully organized and was never capable of owning real estate or acquiring or holding title thereto. Counsel for defendants also contended that subsequently said Flint, still designing, as they averred, to cheat and defraud said Coffin and McDonald and his other creditors, caused the Tuckaseigee Timber

Company to make a deed for said lands to the Whittier Lumber Company, another alleged "dummy" corporation, composed of employés under his control, but claiming that no title passed, because the Tuckaseigee Timber Company had no power to receive or convey title, and because the Whittier Lumber Company was never properly organized and never became a legal corporation capable of holding title to real estate. They further averred that, if the Whittier Lumber Company did acquire any title by said conveyance, it held the same for the benefit of Coffin and McDonald and other creditors of Flint, for the alleged reasons that said conveyances were made for the purpose of cheating and defrauding said creditors; also that the complainant, with full knowledge of these things, acquired possession of the lands in question, and fraudulently procured the institution of the suit to foreclose the mortgage which had been executed by the Whittier Lumber Company to the State Trust Company of New York, and misled the court by collusion with the Whittier Lumber Company, thereby procuring a decree ordering a sale of the lands, and at such sale pretended to become the purchaser of said lands, using said bonds in making payment. They further contended that there was an understanding between complainant and Flint whereby the actual payment for said lands depended upon complainant's establishing title thereto by the conveyance set out in the complaint, and that this proceeding by the complainant is in furtherance of said nefarious scheme, and that, consequently, complainant is not entitled to the relief demanded.

As I have before stated, this was a consent reference, and the defendants are bound by the findings of fact; but, even if the defendants had not consented to the reference, the evidence is such as to fully sustain the findings of the special master. The thirty-first and thirty-second findings of fact by the master are in the following language:

"(31) There is not sufficient evidence that any of the things done by Charles R. Flint, or his agents, or representatives, or business associates, in connection with said lands, or the title thereto, or in connection with the corporations which successively held said title, were done for the purpose of hindering and delaying, or cheating and defrauding, any creditors of said Charles R. Flint, or that there was at any time any conspiracy, or collusion, or understanding between said Charles R. Flint, or his agents or representatives, and Charles J. Harris, or the Harris-Woodbury Lumber Company, for the purpose of hindering and delaying, or cheating and defrauding, any of the creditors of Charles R. Flint, and therefore I find that such is not a fact.

"(32) I find that there was no agreement, understanding, intent, or purpose on the part of Charles J. Harris, or the Harris-Woodbury Lumber Company, to cheat, defraud, hinder, or delay Coffin & McDonald, or either of them, or any other creditors of Charles R. Flint, or any other person, in purchasing said bonds or in procuring said foreclosure, or in buying said lands at said foreclosure sale, or in having title made to the Harris-Woodbury Lumber Company. And I find that Charles J. Harris acted in good faith and without fraud or collusion in the purchase of the bonds of the Whittier Lumber Company and paid a valuable consideration therefor, and that he acted in good faith and without fraud or collusion in procuring the Morton Trust Company to institute said foreclosure suit, and in buying the lands at the sale made under the decree entered in said suit, and in having title made to the Harris-Woodbury Lumber Company, and that said Morton Trust Company acted in good faith and without fraud or collusion in bringing and prosecuting said suit, and that neither said Charles J. Harris nor the Harris-Woodbury Lumber Company have done anything in connection with said lands, or conspired, or colluded, or agreed with Charles R. Flint, or any other person, with intent

and purpose to hinder and delay, or cheat and defraud, Coffin & McDonald, or E. G. Coffin, or D. Samuel White, or any other person."

From what appears it will be seen that the defendants have failed to sustain the averments contained in the answer, and the master not only finds that there is no evidence upon which to sustain the averments in the answer, but further finds as a fact from the evidence that the purchase money paid for the land when it was conveyed to the Foreign Hardwood Log Company was not furnished by Charles R. Flint; that the title to the said land was duly conveyed by the Foreign Hardwood Log Company to the Tuckaseigee Timber Company, and by the latter company to the Whittier Lumber Company; that the Whittier Lumber Company duly issued its bonds and duly executed a mortgage on said lands as security; and that these things were done regularly, without fraud or intent on the part of Charles R. Flint to cheat or defraud E. G. Coffin and F. M. McDonald and the other creditors.

As I have already stated, it is insisted by counsel for defendants that Charles R. Flint was the real owner of the premises in question, and that, while the title to the same was not in his name, there was nevertheless a resulting trust in said lands in his favor; but in view of the evidence, as well as the findings of fact by the special master, I am of the opinion that there never was any resulting trust in these lands or any equitable title thereto in favor of Charles R. Flint. This being the case, it necessarily follows that Charles R. Flint never owned these lands, or had any interest therein, legal or equitable, that would subject the same to the lien of a judgment, or sale under execution, as the property of the said Flint.

It is very properly insisted by counsel for complainant that, inasmuch as it is clear that Flint had no interest in the land subject to attachment, or, indeed, any interest of any kind whatever, the defendants in this action have no standing in this court upon any other questions raised and discussed; their entire claim being based upon the plea that they had acquired title at the foreclosure sale to what they alleged to be Flint's interest in the lands. I have carefully considered the authorities relied upon by counsel for the defendants, but am of the opinion that they do not apply to the case at bar, and are, therefore, not controlling.

From the master's report, it appears that the complainant is the owner, and seised in fee, and actually possessed of the lands described in the complaint; that the deed by the United States marshal to D. Samuel White, bearing date of June 1, 1908, and registered in the office of the register of deeds for Swain county, N. C., on June 2, 1908, is a cloud on complainant's title. Therefore a decree will be entered declaring the Harris-Woodbury Lumber Company to be the owner in fee of the premises in question and requiring the deed executed by the United States marshal to D. Samuel White, as hereinbefore stated, to be surrendered into this court in order that the same may be canceled; also that the defendants, their agents, servants, employés, and attorneys be restrained from further asserting or claiming any interest or estate in or to said lands, or any part thereof, by reason of the said deed to defendant D. Samuel White; that the master's report filed herein be confirmed in all respects.