AMERICAN SURETY COMPANY et al., appellants,

*v.*

THE GREAT WHITE SPIRIT COMPANY et al., respondents.

[Filed June 19th, 1899.]

1. The object of the act of April 21st, 1896 (*P. L. of 1896 p. 319*), is to supplement the act of April 18th, 1884 (*Gen. Stat. p. 3335*), and that object is sufficiently and properly expressed in its title, notwithstanding that title erroneously recites that the last-named act was approved April 18th, 1894.

2. A corporation which has defaulted in the payment of state taxes and has been proclaimed by the governor under the provisions of said act of April 21st, 1896, is within the provisions for winding up corporations, contained in sections 53 to 60 of the Corporation act of 1896. *P. L. of 1896 p. 277.*

3. Upon application by a creditor or a stockholder of such a corporation under section 56 of the Corporation act of 1896, the discretionary power of the chancellor is invoked and should be exercised either to continue the directors as trustees to settle the corporate affairs under said sections or to appoint a receiver for that purpose ; discretion to appoint a receiver should not be disclaimed because of failure of proof of breaches of trust by the directors since the governor's proclamation, but should be exercised upon proof of such breaches of trust, or of previous breaches of trust or misconduct or incapacity evincing the unfitness of the directors to properly discharge the duties of such trust.

4. Whether the provisions of section 66 of the Corporation act are applicable to defaulted and proclaimed corporations during the period within which they may apply for a revival of their corporate life and powers under the provisions of the supplement to the act of April 21st, 1896, which was approved March 25th, 1898 (*P. L. of 1898 p. 182*), *quære*.

*Mr. Charles L. Corbin*, for the appellants.

*Mr. Francis C. Lowthorp*, for the respondents.

The opinion of the court was delivered by

MAGIE, C. J.

Upon a bill filed by appellants as creditors of the Great White Spirit Company, a corporation of this state, an order to show

cause why a receiver for that company should not be appointed was allowed. On the return of the order the matter was heard by Vice-Chancellor Stevens upon the bill and accompanying affidavits and affidavits presented by respondents. Upon his advice the application for a receiver was refused and the order to show cause was discharged. This appeal is from the last-mentioned order.

The bill of appellants prayed for the appointment of a receiver upon two grounds—*first*, because of the insolvency of the company entitling creditors to such relief under the provisions of section 66 of the "Act concerning corporations" (Revision of 1896), approved April 21st, 1896 (*P. L. of 1896 p. 277*) ; and *second*, because of the dissolution of the company entitling its creditors to like relief under the provisions of section 56 of the same act.

The dissolution of the company appeared by the bill and affidavits to have been thus effected. It had defaulted for more than two consecutive years in the payment of state taxes imposed upon it. On May 31st, 1898, the governor issued a proclamation declaring that the charters of this and other corporations were void, and that all powers conferred by law upon such corporations were inoperative and void. This proclamation was issued, not under the provisions of the act of March 20th, 1891 (*Gen. Stat. p. 956*), as supposed by the court below, but under the provisions of an act entitled "A further supplement to an act entitled 'An act to provide for the imposition of state taxes upon certain corporations and for the collection thereof,' approved April eighteenth, one thousand eight hundred and ninety-four," which supplement was approved April 21st, 1896. *P. L. of 1896 p. 319*. No act having the recited title was approved on April 18th, 1894, but an act with that title was approved April 18th, 1884 (*Gen. Stat. p. 3335*), and the plain legislative intent was that the act of 1896 should supplement the act of 1884.

Such being the legislative purpose appearing in the act of 1896, it is obvious that we are confronted with the question whether that purpose has failed of effect by reason of the error

in reciting in the title that the act which it was intended to supplement was approved in 1894 instead of 1884, as was the fact.

Among the provisions of article 4, section 7, placitum 4, of our constitution is one which requires the object of every law to be expressed in the title. This provision has been uniformly held by our courts to be mandatory upon the legislature, and to invalidate all legislative acts the titles of which express the legislative object deceptively or illusively. *Rader* v. *Union, 10 Vr. 509; Jersey City* v. *Elmendorf, 18 Vr. 283; Lane* v. *State, 20 Vr. 673; Falkner* v. *Dorland, 25 Vr. 409; Beverly* v. *Waln, 28 Vr. 143,* as explained in *Johnson* v. *Asbury Park, 31 Vr. 427; Kennedy* v. *Belmar, 32 Vr. 20; Ryno* v. *State, 29 Vr. 238; New York, &c., Railroad Co.* v. *Montclair, 2 Dick. Ch. Rep. 591.*

It is to be observed that the title in question accurately recites the title of the act which was intended to be supplemented by this legislation. No other act of that title is discoverable upon our statute books. The error in the title consists in the misstatement of the date of approval of the act intended to be supplemented. Is the title rendered deceptive or illusive by such an error?

If an act having the recited title, or perhaps a title of similar import, had been approved on April 18th, 1894, a different question would be presented, and one which would probably require to be solved by the application of the doctrines laid down in *New York, &c., Railroad Co.* v. *Montclair, ubi supra.* But an examination of the acts of the legislature of 1894 discloses no act of the same or similar title, and the title in question could not therefore have been either deceptive or misleading.

It remains to consider whether the title expresses the legislative object exhibited in the body of the act. This is to be determined by applying to this title the rules of construction applicable to the description of persons and things, and settling what object, within those rules, is described therein. Had the description of the act intended to be supplemented been limited to the recital of its title, I apprehend no possible question would arise in respect to the title before us being in accord with the constitutional requirement. It would evince that the object of

American Surety Co. *v.* Great White Spirit Co.

the act was supplementary legislation to an act correctly and properly described, and capable of being identified because the only act of that title. The customary addition of the date of the approval of the act intended to be amended, in such titles, may be useful for reference and sometimes even necessary to distinguish between acts of like titles. But if the description is otherwise complete, such added description cannot be necessary.

Does the addition of words purporting to further describe the object, but which are wholly and absolutely false and inapplicable, invalidate an otherwise complete description? When to a complete description words are added which are partially true or may be deemed to qualify or limit in particulars the general description, a question of intent arises. But where there is a wholly inapplicable and false description it cannot be deemed to have been intended to limit the general description and ought to have been rejected under the maxim, *"Falsa demonstratio non nocet."*   *Griscom* v. *Evens, 11 Vr. 402; S. C., 13 Vr. 579.* This conclusion is in harmony with the view lately expressed in this court upon a similar question. *Schmalz* v. *Wooley, 12 Dick. Ch. Rep. 303.*

The result is that the act in question is not lacking in validity.

The act of March 20th, 1891, the provisions of which were deemed to be applicable to corporations in default in the payment of state taxes, was a supplement to the Corporation act then in force. It was therefore repealed by the general repealer contained in section 118 of the "Act concerning corporations" (Revision of 1896), approved April 21st, 1896. But on the same day its provisions were substantially re-enacted in the act the title of which has been under discussion. It was thereby enacted that if any corporation shall for two consecutive years neglect or refuse to pay the state tax assessed against it, its charter shall be void, and all powers conferred by law upon it are declared inoperative and void unless the governor shall for good cause give further time for such payment. It further provided that the comptroller shall report to the governor annually a list of corporations thus defaulting; and that the governor shall forthwith issue his proclamation, declaring under this act that

34

the charters of such corporations are repealed.   The exercise, or attempt to exercise, any power under the charter of any such corporation after proclamation, was made a misdemeanor punishable by fine or imprisonment.   The proclamation of the governor, heretofore stated, conformed to the requirements of this act.

This act and the Corporation act of 1896 are plainly parts of a legislative scheme respecting corporations, and, being *in pari materia*, are to be construed together.   So construed, I think it obvious that the prohibition against the use of corporate powers of proclaimed defaulted corporations did not extend to their use in winding up and settling the affairs of such corporations under the provisions contained in sections 53 to 60, inclusive, of the Corporation act of 1896.   This was the view taken by the learned vice-chancellor in this case, and he properly held the respondent company, after default and proclamation, to be within the provisions of those sections.   By those provisions the directors of a corporation dissolved in any manner are made trustees thereof, with full powers to settle up its affairs.   By section 56 the court of chancery, on application of any creditor or stockholder of such a corporation, is empowered either to continue the directors as such trustees or to appoint one or more persons receivers, to whom are given like powers.   Upon such application affirmative action is required within the discretion of the chancellor either to continue the trust of the directors or to displace them by the substitution of a receiver to perform the trust.

While thus construing the act the vice-chancellor held that the discretion of the chancellor should not be exercised to remove statutory trustees unless it appeared that they had been guilty of breaches of trust after the time it was cast upon them. He therefore declined to advise the appointment of a receiver, because he thought the bill and affidavits showed no such breaches of trust after the proclamation of the governor on May 31st, 1898.

In this respect the construction of the vice-chancellor was too narrow.   The discretion conferred upon the chancellor by this

section, to displace directors by a receiver to carry out this sort of trust, is not dependent upon the misconduct of the directors, since the trust was cast upon them by the statute. Creditors and stockholders interested in the fund to be raised in the winding up of such a corporation may require the chancellor, under this section, to consider whether the directors are fit persons to exercise the trust. If they make out by sufficient proof the unfitness of the directors, a case for the exercise of the discretionary power of the chancellor is presented. Such unfitness may be shown doubtless by proof of breaches of trust after the dissolution of the company, but also by proof of misconduct or breaches of trust previous thereto, or of incapacity to perform the duties of the trust, or of conduct indicating unwillingness to properly perform such duties.

This view is in no respect in conflict with the determination of this court in *Newfoundland Railroad Construction Co.* v. *Schack, 13 Stew. Eq. 222.* In that case a bill filed by a stockholder in a corporation showed that steps were being taken for its dissolution; that its directors had passed the requisite resolution for that purpose, and had called a meeting of stockholders to take action thereon in the manner permitted by law. Upon charges of the insolvency of the corporation and of misconduct of the directors in misappropriating the property of the company and taking steps for its dissolution, it prayed for a receiver and an injunction. A rule to show cause was allowed thereon containing a restraining order requiring the stockholders to refrain from taking any steps to dissolve the company. Upon the return of the rule, the appointment of a receiver was refused, but the restraining order was continued to final hearing. The appeal questioned the propriety of the restraining order, and that was the only question before us. What was said in the opinion of the learned justice who spoke for the court, in respect to the statutory provisions as to the duty cast upon directors and the duty of the chancellor when applied to for the appointment of a receiver after dissolution of a corporation under the then existing law, was only illustrative of the matter under consideration. It was not intended to limit and did not limit the

discretionary power of the chancellor in such cases to those in which breaches of trust after the dissolution of the corporation were shown.

Looking at the facts appearing in the bill and affidavits (excluding from consideration all affidavits which are claimed in the briefs of counsel for respondent not to have been presented to the vice-chancellor), we conclude that a proper discretion required the removal of the directors from the trust and the appointment of a receiver to settle the corporate affairs. It clearly appears that under the management of these directors the corporation had become insolvent at its very first business transaction; that it had never engaged in the business which it was formed to carry on; that its capital had been placed largely in unproductive property; that the income from its only productive property had not been used in the payment of our state taxes, and by reason of such failure the corporation had become defunct, and that such income had been assigned to a trustee whose duty was to use a part thereof so as to give a preference to a corporate debt due to one of the directors. We think that the unfitness of the directors to properly discharge the trust was thus demonstrated.

The vice-chancellor further held that upon the dissolution of the respondent company in the manner above described, the provisions of section 66 of the Corporation act of 1896, for the appointment of a receiver in cases of insolvency, were inapplicable.

By an act entitled "An act to amend an act entitled 'A further supplement to an act entitled "An act to provide for the imposition of state taxes upon certain corporations and for the collection thereof,"' approved April 21st, 1896," which act was approved March 25th, 1898 (*P. L. of 1898 p. 182*), it is provided that if the charter of any corporation shall become inoperative and void by proclamation of the governor for the non-payment of taxes, upon payment within two years thereafter of such sum as to them shall seem reasonable, the governor, by and with the advice of the attorney-general, may permit such defaulted corporation to be reinstated and entitled to all its fran-

chises and privileges, and upon such payment the secretary of state shall issue a certificate entitling such corporation to continue its business and its said franchises.

The legislative purpose disclosed by this act is to permit for a limited period the revival and renewal of corporate functions and powers which have become, under previous legislation, inoperative and void, by the mere permission of the governor, advised by the attorney-general. Whether that purpose has been effected by this act is a question not argued and not necessary to decide.

If there is a possibility of such revival of a dissolved corporation, it is open to question whether the provisions of section 66 are not applicable to it. Manifestly the interest of creditors and stockholders of such a corporation, if it is insolvent, may require the interference of the court and the appointment of a receiver on that ground.

But as a receiver is to be appointed under the provisions of section 56, the question suggested need not be determined.

The order appealed from is reversed, and the cause is remitted with instructions to appoint a receiver.

*For reversal*—THE CHIEF-JUSTICE, VAN SYCKEL, DIXON, GARRISON, LIPPINCOTT, COLLINS, BOGERT, HENDRICKSON, NIXON, ADAMS, VREDENBURGH—11.

*For affirmance*—None.