## HELD v. CROSTHWAITE et al.

### (Circuit Court of Appeals, Second Circuit. July 7, 1919.)

### No. 195.

CORPORATIONS ⬤⇒336—LIABILITY OF OFFICERS ON CONTRACTS AFTER REPEAL OF CHARTER FOR NOT PAYING TAXES.

Under Act N. J. June 3, 1905, § 2 (P. L. p. 509), providing that, where a corporation shall fail for two years to pay state taxes, its charter shall be repealed by proclamation by the Governor, and that "all powers conferred by law upon such corporations shall thereafter be deemed inoperative and void." and section 7 of said act, authorizing the Governor, upon settlement with such a corporation, by a second proclamation to reinstate its charter, whereupon the secretary of state shall issue his certificate "entitling such corporation to continue its said business and its said franchises," where, after the issuance of a repealing proclamation, but without knowledge of the fact, the officers of a corporation continued its business in good faith, and persons dealt with them with the understanding that they were acting for the corporation, which was afterwards reinstated. such officers cannot be held personally liable on contracts so made.

Rogers, Circuit Judge, dissenting.

In Error to the District Court of the United States for the Southern District of New York.

Action at law by Gustave Held, trading as Gustave Held & Co. against Burwell M. Crosthwaite, John L. Crosthwaite, and William

---

H. Brearly, trading under the name of the Crosthwaite & Cannon Company. Judgment for defendants, and plaintiff brings error. Modified and affirmed.

A. L. Pincoffs, of New York City, and J. Edward Ashmead, of Newark, N. J., for plaintiff in error.

William Otis Badger, Jr., of New York City, for defendant in error Burwell M. Crosthwaite.

Joseph T. Weed, of New York City, for defendant in error Brearly.

Before WARD, ROGERS, and HOUGH, Circuit Judges.

WARD, Circuit Judge. This is an action to recover damages in the sum of $52,000 against the defendants, alleged to be trading together as copartners under the name of the Crosthwaite & Cannon Company, insurance brokers, for negligence in obtaining for the plaintiff from Morgan, Lyons & Co., insurance brokers of London, agents of underwriters of 'Lloyds, a marine policy upon 3,000 bags of coffee, of the value of $96,000, New York to Havre, which did not cover, as they had undertaken it should, losses resulting from hostilities and warlike operations. The vessel carrying the shipment of coffee was torpedoed and sunk en route on the high seas, and the plaintiff's coffee became a total loss.

The defendant John L. Crosthwaite was not served, and it was stipulated between the parties that the answer of the defendant Burwell M. Crosthwaite should stand as the answer of the defendant William H. Brearly.

The contract was made by the plaintiff with the Crosthwaite & Cannon Company, a corporation of the state of New Jersey, on or about June 25, 1917.

The first count of the complaint alleges that on January 26, 1915, because of its failure to pay for two successive years taxes due the state of New Jersey for 1912, the Governor of the state issued a proclamation declaring that the charter of the corporation was void, and all powers conferred upon it by law inoperative and void, in accordance with the act of June 3, 1905 (P. L. p. 508), amended by the act of March 11, 1914 (P. L. p. 27), which provides:

"1. If any corporation created under any act of this state shall for two successive years neglect or refuse to pay the state any tax which has been or shall be assessed against it under any law of this state and made payable into the state treasury, the charter of such corporation shall be declared void as in section two of this act provided, unless the Governor shall, for good cause shown to him, give further time for the payment of such tax, in which case a certificate thereof shall be filed by the Governor in the office of the comptroller, stating the reasons therefor.

"2. On or before the first Monday in January in each year the comptroller shall report to the Governor a list of all corporations which for two years next preceding such report have failed, neglected or refused to pay the taxes assessed against them under any law of this state as above, and the Governor shall forthwith issue his proclamation, declaring under this act of the Legislature that the charters of these corporations are repealed, and all powers conferred by law upon such corporations shall thereafter be deemed inoperative and void.

"3. The proclamation of the Governor shall be filed in the office of the secretary of state."

The complaint further alleges:

"(9) That thereafter, and until March 5, 1918, the said defendants continued to carry on the business of the Crosthwaite & Cannon Company, then nonexistent, consenting and allowing themselves to be made directors, and to be held out to the public as such, and the business of said company to be carried on under their authority and management as such directors."

The second count charges the defendants with liability because holding themselves out as agents of the Crosthwaite & Cannon Company:

"(22) That the said defendants thereafter, and until March 5, 1918, continued to carry on the business of the Crosthwaite & Cannon Company, then nonexistent, and consented and allowed themselves to be held out to the public as agents of said company, and the business of said company to be carried on under their authority and management as such agents."

The third count charges them with liability for representing that the Crosthwaite & Cannon Company, then nonexistent, was the duly authorized agent of Morgan, Lyons & Co., with power to deliver to plaintiff a binding receipt against marine and war risks to cover the said shipment of coffee, whereas the company had no such power.

The fourth count charges the defendants with liability for representing themselves as agents of the Crosthwaite & Cannon Company and for representing that company as agent for Morgan, Lyons & Co.

After several denials, the defendants set up three separate defenses as follows:

First. That on March 5, 1918, the Governor of New Jersey revoked his proclamation of January 26, 1915, by a second proclamation reinstating the Crosthwaite & Cannon Company; that the plaintiff contracted with the corporation, having knowledge or means of knowledge of the statutes of New Jersey and of the Governor's proclamation of January 26, 1915.

Second. That the Crosthwaite & Cannon Company was both a de jure and a de facto corporation.

Third. That the Crosthwaite & Cannon Company had full authority as agent to issue the binding receipt for Morgan, Lyons & Co., which is in full force and effect.

The plaintiff demurred to the three defenses "on the ground that they and each of them are insufficient in law upon the face thereof."

Judge Augustus N. Hand thought that the complaint was itself demurrable, but instead of dismissing it he overruled the demurrer, without giving the plaintiff leave to withdraw it, and entered judgment for the defendants.

No charge of fraud is made against the defendants, and the real question is one of law, as to the defense that on March 5, 1918, the Governor, pursuant to the powers conferred upon him by the statutes of New Jersey, by a second proclamation revoked and annulled his first proclamation of January 26, 1915, and reinstated the corporation as of that date. The statute (Chapter 259, Laws 1905) is not set out or pleaded by title, but section 7 is as follows:

"If the charter of any corporation organized under any law of this state shall hereafter become or shall have heretofore become inoperative or void by proclamation of the Governor or by operation of law, for nonpayment of

taxes, the Governor, by and with the advice of the Attorney General, may, upon payment by said corporation to the secretary of state of such sum in lieu of taxes and penalties as to them may seem reasonable, but in no case to be less than the fees required as upon the filing of the original certificate of incorporation, permit such corporation to be reinstated and entitled to all its franchises and privileges, and upon such payment as aforesaid the secretary of state shall issue his certificate entitling such corporation to continue its said business and it said franchises. * * *"

If the defendants rightly state the effect of the second proclamation, it is a defense to the whole complaint, because all four counts proceed upon the theory that the defendants as matter of law acted as individuals; the Crosthwaite & Cannon Company being nonexistent.

There is difficulty in reconciling the language of sections 1 and 2 of the act of June 3, 1905, providing for the Governor's proclamation declaring the repeal of charters for nonpayment of taxes for two years, with the language of section 7, providing for a subsequent proclamation reinstating the charter. The question has not been passed upon by the courts of New Jersey.

We think it clear that the charter may be and by the statute is repealed by the Governor's proclamation without the necessity of any application to the courts. It seems to us equally clear that the Legislature cannot have intended by section 7 that upon payment of taxes by the corporation the Governor should create a new corporation. The Legislature alone can grant corporate franchises, and no intention should be imputed to it to delegate the power to the Governor. Indeed, such a delegation would be invalid. "Delegatus non potest delegare." Therefore the second proclamation of reinstatement must be held to relate to the first proclamation of repeal, and the corporation must be regarded as having continuously existed so far as the state is concerned. This is in accordance with the certificate which the secretary of state is required to issue, entitling the corporation "to continue its said business and its said franchises."

It is noteworthy that the statute in question is not a part of the general act of 1896 entitled "An act concerning corporations," but is a supplement to the act of 1884 entitled "An act to provide for the imposition of state taxes upon certain corporations and for the collection thereof." The plain object of the act was the collection of revenue for the state. It was held in American Surety Co. v. Great White Spirit Co., 58 N. J. Eq. 526, 43 Atl. 579, that the act was entirely consistent with the provisions of the General Corporation Act of 1896 (P. L. pp. 295, 296), section 53 of which provides:

"All corporations, whether they expire by their own limitation or be annulled by the Legislature or otherwise dissolved, shall be continued bodies corporate for the purpose of prosecuting and defending suits by or against them, and of enabling them to settle and close their affairs, to dispose of and convey their property and to divide their capital, but not for the purpose of continuing the business for which they were established."

We took the same view in Re Munger Tire Co., 159 Fed. 901, 87 C. C. A. 81. There is great force in saying that vested rights obtained by individuals in the period between the two proclamations should not be disturbed; but were any rights vested? Persons dealing with in-

dividuals as agents or directors of a corporation between a proclamation repealing and a proclamation reinstating the charter must be taken to know that by the law of the state the corporation could be reinstated and continued as to all its franchises as if the charter had never been repealed and its powers declared void. It must be confessed that the language used as to the repealing proclamation is very strong, but unless the provision for the reinstating proclamation is a nullity it must be held to relate to the repealing proclamation and completely validate the corporation and the acts of persons dealing as its directors and agents from that date.

If the defendants had acted fraudulently, or if they had acted innocently, the corporation itself being a fraudulent concern, they might be held liable (Wonderly v. Booth, 36 N. J. Law, 250); but it is not pretended that either party was actually aware of the Governor's proclamation repealing the charter. The plaintiff acted upon the supposition that he was dealing with the defendants, not individually, but as representing the Crosthwaite & Cannon Company, and the defendants acted upon the same understanding. Indeed, the complaint itself states facts in articles 9 and 22, hereinbefore quoted, which show that during the interval between the two proclamations the corporation was at least a de facto corporation.

It seems to us that the statutes construed as above and applied to the facts in this case leave the plaintiff with a remedy against the corporation only, and that this is a just and fair result. It cannot be considered a hardship that the parties should be held to their common understanding.

But we think the plaintiff should have leave to withdraw his demurrer, if he wishes to do so, and, modified in this respect, the judgment is affirmed.

ROGERS, Circuit Judge (dissenting). As I do not concur in the conclusion reached by the majority of the court, I shall state at length the view I entertain as to the law applicable to the facts which the record discloses. The case presents several important questions in the law of corporations. The damages which the plaintiff claims it has suffered are considerable in amount. And the court below in dismissing the complaint stated that he was "inclined" to believe that it stated no cause of action. This court is called upon to determine whether the complaint states a cause of action.

The theory of complainant's suit is:

(1) That the Crosthwaite & Cannon Company was dissolved by the Governor's proclamation.

(2) That after its dissolution its directors continued to carry on its business as before, representing that the company, then nonexistent, was the duly authorized agent of Morgan Lyons & Co. in London, England, the latter being agents for the underwriters at Lloyds, and that in consideration of $8,937.50 to them paid they agreed with the plaintiff to negotiate through Morgan Lyons & Co. for the plaintiff's benefit a policy of insurance against all adventures and perils of the sea, including all loss resulting from hostilities and warlike operations, and that the directors informed plaintiff that the policy had been effected, and that in fact no such policy was effected.

(3) That the defendants, having carried on the business for a nonexistent principal, became personally liable.

The first question which arises is whether at the time the contract was made the Crosthwaite & Cannon Company was nonexistent. It is alleged that plaintiff on June 25, 1917, requested defendants to negotiate the policy of insurance, and that on July 6, 1917, the defendants as representing the aforesaid company delivered to the plaintiff a binding receipt and agreed that the receipt should insure against war and marine risk. This was after the Governor had issued his proclamation repealing the charter, that proclamation having been issued on January 26, 1915; and the contract was also entered into prior to the issuance of the Governor's second proclamation which purported to reinstate the corporation, which proclamation was issued on March 5, 1918.

Did the proclamation of June 25, 1917, dissolve the corporation and make it nonexistent? The New York Court of Appeals in the Matter of N. Y. & Long Island Bridge Co., 148 N. Y. 540, 547, 42 N. E. 1088, 1089 (1896), refers to "the undoubted power of the Legislature to provide that corporate existence shall cease by the mere fact of failure of the corporation to perform certain acts imposed by the charter." It adds that it however requires strong and unmistakable language to authorize the court to hold that it was the intention of the Legislature to dispense with judicial proceedings on the intervention of the Attorney General. If the Legislature has undoubted power to provide that corporate existence shall cease by the failure to perform certain specified acts, then the power of the Legislature of New Jersey to enact the particular statute herein involved must be also undoubted, for the language used is strong and unmistakable. The Governor is directed to declare the charter "repealed," and thereafter all the powers of the corporation are to be deemed "inoperative and void." There can be no doubt as to what was the legislative intention.

The question presented does not seem to be so free from doubt that the courts have all reached a like conclusion.

Mr. Justice Blackstone declares that a corporation may be dissolved by forfeiture of its charter through negligence or abuse of its franchise, in which case the law judges that the body politic has broken the condition upon which it was incorporated, and thereupon the corporation is void; "and the regular course," he says, "is to bring an information in nature of a writ of quo warranto, to inquire by what warrant the members now exercise their corporate power, having forfeited it by such and such proceedings." Blackstone's Commentaries, vol. 1, p. 485.

Chancellor Kent's statement is that the charter of a corporation cannot, against its consent, be forfeited "without the default of the corporation judicially ascertained and declared." Kent's Commentaries, vol. 2, p. 305.

In Morawetz on Corporations, vol. 2, § 1015, that writer says:

"* * * The franchises continue in full force until the penalty of forfeiture is claimed by the state granting the franchises; and this can be done

only through a proper legal proceeding, by which the cause of forfeiture is judicially ascertained."

In Cook on Corporations, § 637, that writer says:

"As a rule no one is allowed to assert that the corporation is dissolved, or its franchise forfeited, or its incorporation illegal, until after such a result has been decreed by a court in a proceeding instituted for that purpose by the state."

Mr. Justice Story, writing for the court in Terrett v. Taylor, 9 Cranch, 43, 51, 3 L. Ed. 650 (1815), said:

"A private corporation created by the Legislature may lose its franchises by a misuser or a nonuser of them; and they may be resumed by the government under a judicial judgment upon a quo warranto to ascertain and enforce the forfeiture. This is the common law of the land, and is a tacit condition annexed to the creation of every such corporation."

In Atchafalaya Bank v. Dawson, 13 La. 497 (1839), the bank's charter provided that in case of a suspension of specie payment for more than 90 days the charter should be ipso facto forfeited and void. The court held that the happening of the contingency merely gave the state the right to enforce a forfeiture in a proper judicial proceeding. The Civil Code of the state (article 438) provided that a corporation becomes "extinct" by the effect of the violation of the conditions of the act of incorporation, and the act of incorporation of the bank provided as above stated that on suspension of specie payments the charter should be, ipso facto, forfeited and void. The court thought that the only difference between the text of the Code and that of the act was the difference between Latin and English. And it was held that until a forfeiture had been judicially decreed the existence of the corporation could not be questioned. "I am of opinion," said Judge Rost, "that, notwithstanding the words 'ipso facto,' the only effect of the suspension of specie payments by the plaintiffs was to give the state the right to claim the forfeiture, in an action instituted for that purpose."

The Supreme Court had the question before it in 1860 in Lessee of Frost v. Frostburg Coal Co., 24 How. 278, 16 L. Ed. 637. In that case an act of incorporation passed in 1845 provided that the corporation thereby created should be subject to all the restrictions imposed by the general incorporation law of 1838, one of which was that when the capital stock became concentrated in the hands of less than five persons all the corporate powers and privileges granted "shall cease and determine." It was held that the courts were bound to regard the corporation as in existence so far as third persons are concerned until it should be dissolved by a judicial proceeding on behalf of the government that created it. I do not regard that case as decisive of the question involved here; the case being distinguishable from the one now before the court. In that case the Supreme Court passed upon a Maryland statute, the validity of which had not been sustained by the Maryland courts. In this case this court is passing upon a New Jersey statute, which, as will be seen, the highest court in that state has decided is valid. In Lessee of Frost the court does not point out that the statute violates any provisions of the Constitution of the United

States; neither is it intimated that the statute is unconstitutional. The case goes upon the theory that a forfeiture is involved, and that a private party cannot take advantage of the forfeiture. "That is a question for the sovereign power, which may waive it, or enforce it, at its pleasure." That is the sole reason assigned for the decision, and it is without application to the instant case. In the pending case the state, which has the power "to waive or enforce at its pleasure," has made known its pleasure through the proclamation of the Governor declaring the charter repealed and its powers void. This comment is equally applicable to certain other cases of a like character cited herein.

In La Grange, etc., R. R. Co. v. Rainey, 7 Cold. (Tenn.) 432 (1870), it is said:

"If the act of incorporation fixes a definite time in which the charter shall expire, as, for instance, in 20 years, there can be no doubt that when that period of time expires the corporation is dissolved. But when the continuance of the corporation beyond a fixed time is made to depend upon the performance of a given condition, there can be no doubt that the nonperformance of the condition is a mere ground of forfeiture. This, however, can be taken advantage of only by the state in the proceeding in the nature of a quo warranto, and the existence of the corporation can never be collaterally called in question."

In Ahrens v. State Bank, 3 S. C. 401 (1871), it was held that, where a statute declares a forfeiture of a corporate franchise as the consequence of a failure of legal duty on the part of a corporation, the statute is to be regarded as penal in its nature, and the act of wrong must be judicially ascertained in a direct and proper judicial proceeding, before the penal consequences imposed by the statute become operative.

In Shand v. Gage, 9 S. C. 187 (1877), an act of incorporation made it the duty of the president and treasurer, on the first day of every month, to transmit a sworn statement to the state comptroller general, showing certain specified matters, and it provided that in case such report was not made for two consecutive months it should be the duty of the comptroller general to report that fact to the Governor, "who shall forthwith issue his proclamation declaring the charter of such association forfeited." The court held that a Governor's proclamation declaring a corporation dissolved because of its failure to file its report as required did not of itself forfeit the charter. It held that the fact which caused the forfeiture must first be judicially determined. "We are," said the court, "clearly of opinion that the proclamation of Governor Orr did not work an actual dissolution."

In Wallamet Falls Canal, etc., Co. v. Kittridge, 5 Sawy. 44, Fed. Cas. No. 17,105 (1877), the court passed upon the corporation law of Oregon, which provided that if any corporation neglected and ceased to carry on its business for any period of six months its corporate powers should cease. The court held that such neglect and cessation did not, ipso facto, terminate the existence of the corporation, but simply constituted a ground of forfeiture enforced by the state in a proper proceeding.

In Briggs v. Cape Cod Ship Canal Co., 137 Mass. 71 (1884), the charter provided that, if at least $25,000 was not expended in the actual construction of the canal within four months from the passage

of the act, "this corporation shall thereupon cease to exist." This provision was not complied with. The court held that the question whether the corporation has ceased to exist could be judicially determined only in a suit to which the commonwealth was a party. This the court declared "is too well settled to admit of discussion."

In Lumber Co. v. Ward, 30 W. Va. 43, 3 S. E. 227 (1887), it appeared that an act of that state imposed certain taxes upon corporations, and provided that if any corporation failed to pay its taxes on or before a certain day it "shall because of such failure forfeit its charter to the state." The act also directed that the state auditor should publish in two newspapers "a list of such corporations as have forfeited their charters under this provision of this section within the preceding year." A corporation which was in default under this law, commenced an action against the defendants, who filed a plea that the plaintiff was not a corporation, its charter having been forfeited, and the certificate of the secretary of state was brought in, stating that it appeared from the records in his office that the company had forfeited its charter under the legislative act referred to, and that due publication of such forfeiture had been made by the auditor as required by law. The plea was sustained, and the suit dismissed in the court below. The Supreme Court of Appeals reversed the judgment and said:

"In the case before us the Greenbrier Lumber Company has never been dissolved, as a forfeiture of its charter has never been judicially ascertained and declared in a proceeding for the purpose by the state."

In New York & New England R. R. Co. v. New York, New Haven & Hartford R. R. Co., 52 Conn. 274 (1884), the charter of a railroad declared that, if the company did not do certain things within a defined period, "then the rights, privileges and powers of said corporation shall be null and void." The court declared that, if the company had not performed as required, "we do not think that the plaintiffs can take advantage of it in this case, notwithstanding the unqualified language of the provision. * * * The forfeiture is to be asserted by the state, by proceedings to which the corporation is a party." And the court quoted from the opinion in Pahquioque Bank v. Bethel Bank, 36 Conn. 334, 4 Am. Rep. 80, where it was said:

"It is a well-settled principle that a dissolution by forfeiture can only be effected by judicial proceedings against the corporation taken for that purpose, a hearing or an opportunity for a hearing had, and a judgment of forfeiture rendered thereon."

In Galveston, etc., R. R. Co. v. State, 81 Tex. 596, 17 S. W. 67 (1894), the statute provided that upon a certain contingency the charter of the company should be forfeited. It was held that this prescribed the ground of forfeiture, but not the manner, and that the manner must be by a judicial proceeding instituted directly for that purpose.

A statute of the state of Illinois required certain corporations annually at a specified time to file a sworn report with the secretary of state, giving certain information, and it declared that the failure to file such report was prima facie evidence that the corporation was out of business, and that it should work a forfeiture of the charter of such

corporation. The act made it "the duty of the secretary of state to enter upon the records of his office, as soon as practicable after default in making such report, the cancellation of the charters of all corporations failing to make said report at the time and in the manner herein provided." It also authorized, on the payment of a specified fee, the secretary of state to reinstate a corporation which had failed to make the report required. The act involved thus resembled, in these particulars, the statute of New Jersey in the instant case. In that case the question came before the court on a petition for a mandamus to the secretary of state compelling him to cancel the forfeiture of the cancellation he had placed on the records of his office, and to reinstate the petitioning corporation upon the records of the secretary of state on the payment of the fee. It was alleged that some 25,000 charters had been canceled under this act prior to the time the suit was commenced to test the validity of the act. The constitutionality of the act was attacked upon the ground that the Legislature had no power to dissolve a corporation or to declare a forfeiture of its franchise, nor the power to prescribe a state of facts under which this could be done under an administrative officer, because such an act involved the exercise of judicial power, which under the Constitution of the state and of the United States is vested in the judicial, and denied by implication to the legislative, department. The Supreme Court of the state, recognizing the force of the argument, held that the cancellation which the secretary of state was required to enter upon his records did not of itself work a forfeiture of the corporation's charter, but that it was simply prima facie evidence of nonuser, which might be availed of by the Attorney General in a proceeding to forfeit the charter. In the course of its opinion in this case the court said:

"To give to this statute the meaning contended for by petitioner is to say that the purpose of the Legislature was to make the failure to report conclusive evidence that a forfeiture has taken place, although the statute expressly says it shall be prima facie evidence merely. This construction of petitioner finds support, it is true, in the fact that the statute provides that the failure to report shall work a forfeiture of the charter, thereby attempting to give to the evidence, which it says is prima facie, the effect of evidence that is conclusive. The provisions of this statute are in that respect inconsistent with each other, and the meaning of the act must be determined by the construction placed thereon by the courts. To say that it merely provides what shall be prima facie evidence of nonuser, and for recording that evidence, is to uphold it; to say that the act of the secretary of state, which it directs, absolutely forfeits the charter of the defaulting corporation, is to destroy it."

Judge Magruder, who filed a separate opinion dissenting in part from the conclusion of the majority, denied the power of the Legislature to provide for the cancellation of the charter without a judicial investigation, and in referring to the failure of the corporation to file the required report he said:

"If this failure be regarded as 'misconduct,' it could not so far forfeit the right of the petitioner to be a corporation, that that right could be taken from it without judicial proceedings, declaring the forfeiture in due form. The Legislature cannot declare a forfeiture of property by an act of its own, and, if this is so, it cannot confer the power to declare such forfeiture upon a ministerial officer, like the secretary of state." People v. Rose, 207 Ill. 352, 69 N. E. 762.

In People v. Rose the corporation involved was organized in 1900 under a general incorporation act passed in 1872 (Laws 1871–72, p. 296), and the statute empowering the secretary of state to cancel for failure to report was passed in 1901 (Laws 1901, p. 124). The act of 1872 provided in section 9 that the Legislature should at all times "have power to prescribe such regulations and provisions as it may deem advisable, which regulations and provisions shall be binding on any and all corporations formed under the provisions of this act." And the court held that the act of 1901 is within the terms of section 9 and must be deemed to be a part of the charter of every corporation organized under the act of 1872.

In the case now before the court the corporation was organized in 1908 and the statute empowering the Governor to cancel for failure to pay taxes assessed against it was passed in 1905, three years prior to the taking out of the charter. But People v. Rose is not distinguishable on that ground, for, as I have said, the court treated the act of 1901 as a part of the charter of the corporation, although it was organized under the law of 1872.

In Matter of N. Y. & Long Island Bridge Co., supra (1896), an act incorporating a bridge company provided that the bridge should be commenced within two years from the passage of the act and continued without unreasonable delay until completed; "or this act and all rights and privileges granted hereby shall be null and void." Counsel contended that this act was self-executing, and that as the bridge was not commenced within two years from the passage of the act the bridge company ipso facto ceased to exist. The court held otherwise. "It cannot be said," said the court, "that the words 'shall be null and void' disclose the legislative intent to make this clause self-executing. The words 'null and void,' as used in this connection clearly mean voidable. The word 'void' is often used in an unlimited sense, implying an act of no effect, a nullity ab initio; in the case at bar it was not so employed, but rather in its more limited meaning. We think these words mean no more than if the Legislature had said, in case of default the corporation 'shall be dissolved.' The Attorney General was authorized to treat the charter of the bridge company as voidable, and by appropriate legal proceedings to have terminated its corporate existence." In that case, however, as has been already pointed out in this opinion, the court stated its belief that the Legislature might provide for the termination of corporate existence by the failure to perform certain specified acts, if the Legislature indicated its intention by unmistakable language.

In Cook on Corporations, vol. 2, § 638 (7th Ed.), that writer, speaking of provisions in charters of railroads declaring that upon a failure to complete the road within a specified time the corporate powers and existence shall cease, says:

"There is a strong line of decisions to the effect that such a provision as this forfeits the charter absolutely upon noncompliance, and that no decree of a court is necessary to effectuate that forfeiture. But this drastic and dangerous construction does not commend itself to law and justice. It adds one more to the perils which are attached to all great corporate enterprises. Even

in New York, where the above doctrine seems to have had its origin, the courts are inclined to limit its application."

The courts in a number of cases have held that upon the failure of a railroad to comply with the requirement within the specified time its corporate existence ipso facto ends without any judicial proceeding. Matter of Brooklyn, etc., Ry. Co., 72 N. Y. 245; Brooklyn Steam Transit Co. v. City of Brooklyn, etc., R. R., 185 N. Y. 171, 77 N. E. 994; Millcreek Township v. Erie Rapid Transit Street Railway Co., 209 Pa. 300, 58 Atl. 613; In re Philadelphia & M. Ry., 187 Pa. 123, 40 Atl. 967; Maine, etc., R. R. v. Maine, etc., R. R., 92 Me. 476, 43 Atl. 113. In the above class of cases the words used are regarded as fixing a time for the expiration of the charter, so that when the time named arrives the corporation loses its power to act, or to do any business beyond such as is necessary in the process of winding up. It is regarded as not so much a case of forfeiture as of loss of legal entity. At the end of the time limited the corporation comes to an end, as if that were the time limited in its charter for its corporate existence. See Bybee v. Oregon & California R. R. Co., 139 U. S. 663, 667, 11 Sup. Ct. 641, 35 L. Ed. 305.

In Kaiser Land & Fruit Co. v. Curry, 155 Cal. 638, 103 Pac. 341 (1909), the court passed upon a statute which imposed on corporations the duty of paying a license tax each year, and required the secretary of state to report to the Governor a list of all corporations in default, and provided that the Governor should forthwith issue his proclamation declaring forfeited the charter of the delinquent domestic corporations unless payment was made on a specified day. The act also declared it to be unlawful for any corporation, domestic or foreign, which had not paid the tax as prescribed, to transact any business thereafter. The question was considered whether a failure to pay the tax as provided ipso facto worked a forfeiture of the charter, or whether it simply made the charter liable to forfeiture by the decree of a court of competent jurisdiction. The court said:

"All the cases agree upon the proposition that, although a forfeiture at common law does not operate to divest the title of the owner until by a proper judgment in a suit instituted for that purpose the rights of the state have been determined, a statute prescribing a forfeiture may be self-executing. Upon this point the language of the act is so clear and unmistakable in meaning that we should be obliged to hold that it was intended that such failure should ipso facto work a forfeiture, even if the result thereof should be, as claimed, that the act so providing must be held unconstitutional on the ground that it violates the due process of law clauses of the federal and state Constitutions. We concede the claim that the act should be construed against such ipso facto forfeiture if the language used is fairly susceptible of such interpretation, but we are satisfied that it is not so susceptible. * * * The language used is irreconcilable, under the decisions in this state, with any other theory than that of ipso facto forfeiture."

And the court held that the act was not in violation of the due process of law provisions of the federal and state Constitutions.

The New Jersey statute, now before this court, came before the New Jersey Court of Errors and Appeals in 1899 in American Surety Co. v. Great White Spirit Co., 58 N. J. Eq. 526, 43 Atl. 579. In that

case the bill was filed by creditors of the Great White Spirit Company and prayed for the appointment of a receiver upon two grounds: (1) Because of the insolvency of the company; and (2) because of the dissolution of the company under the statute because of the Governor's proclamation declaring the charter void. The court considered the act valid in so far at least as it provided for the dissolution of the corporation by proclamation of the Governor, remitting the case with instructions to appoint a receiver. The constitutionality of the statute was assailed on the ground that its object was not accurately recited in its title. A large part of the opinion related to that question, which was the only constitutional question considered. The court announced its conclusion upon that matter by saying:

"The result is that the act in question is not lacking in validity."

The question raised in People v. Rose, supra, was not mentioned in the opinion and does not appear to have been suggested by counsel; and the court did not decide as to the effect to be given to the clause authorizing the Governor by a second proclamation to renew the corporate existence. It alluded to the subject, saying:

"The legislative purpose disclosed by this act is to permit for a limited period the revival and renewal of corporate functions and powers which have become, under previous legislation, inoperative and void, by the mere permission of the Governor, advised by the Attorney General. Whether that purpose has been effected by this act is a question not argued and not necessary to decide. If there is a possibility of such revival of a dissolved corporation, it is open to question whether the provisions of section 66 are not applicable to it."

The important fact is that the court regarded the corporation dissolved by the proclamation of the Governor. As the question presented to us is whether a New Jersey corporation was dissolved by the proclamation of the Governor of that state acting under a statute of that state, I agree that we must decide that question in the affirmative upon the authority of the American Surety Company's Case declaring the statute valid. This court is concluded by that decision, unless there is something in the statute which violates the due process clause of the Fourteenth Amendment to the Constitution of the United States.

The provision relating to due process of law was introduced into our American Constitutions, federal and state, as a protection to the individual against the arbitrary exercise of governmental power by any of its agencies, legislative, executive, or judicial, and to secure him against an arbitrary deprivation of the right to life, liberty, or property; and a corporation is a person within the meaning of the constitutional provision which declares that no person shall be deprived of life, liberty, or property without due process of law. The franchises of a corporation, being property, are as much under the protection of the constitutional provision referred to as is the property of a natural person.

Under ordinary circumstances due process of law implies a formal judicial proceeding, but such a proceeding is not invariably required. The Supreme Court in Reetz v. Michigan, 188 U. S. 505, 23 Sup. Ct. 390, 47 L. Ed. 563, said:

260 F.—40

"We know of no provision in the federal Constitution which forbids a state from granting to a tribunal, whether called a court or a board of registration, the final determination of a legal question. Indeed, it not infrequently happens that a full discharge of their duties compels boards, or officers of a purely ministerial character, to consider and determine questions of a legal nature. Due process is not necessarily judicial process."

In Title Guaranty & Surety Co. v. State of Idaho, 240 U. S. 136, 36 Sup. Ct. 345, 60 L. Ed. 566, the court held that the due process provision does not prevent a state from placing upon a bank commissioner the duty of closing a bank found upon examination to be insolvent without first instituting proceedings and obtaining an award.

In Lieberman v. Van De Carr, 199 U. S. 552, 26 Sup. Ct. 144, 50 L. Ed. 305, the plaintiff was engaged in selling milk in the city of New York. Under the Sanitary Code no person could sell milk in the city without a permit from the board of health. The plaintiff had obtained such a permit, which the board afterwards revoked. He continued to sell without a permit, and was arrested, and his defense was that he had been deprived of his permit, of his liberty and property, without due process of law. There was nothing in the record to show upon what ground the action of the board was taken. The court said:

"For aught that appears he may have been conducting his business in such wise, or with such surroundings and means, as to render it dangerous to the health of the community, or his manner of selling or delivering the milk may have been objectionable. There is nothing in the record to show that the action against him was arbitrary or oppressive and without a fair and reasonable exercise of that discretion which the law reposed in the board of health. We have, then, an ordinance which, as construed in the highest court of the state, authorizes the exercise of a legal discretion in the granting or withholding of permits to transact a business, which, unless controlled, may be highly dangerous to the health of the community, and no affirmative showing that the power has been exerted in so arbitrary and oppressive a manner as to deprive the appellant of his property or liberty without due process of law."

In the instant case the corporation was granted a franchise by the state of New Jersey, and its right to exist was under its contract with the state conditioned upon its paying into the state treasury the taxes assessed against it, and if for two successive years it failed to do so it was made the duty of the Governor to revoke its charter. The proclamation of the Governor did not deprive the corporation of its property without due process of law. The period of corporate existence was fixed by its charter, which provided for its termination upon the issuance of the Governor's proclamation under the conditions specified. There is nothing in this to suggest an arbitrary, oppressive, or unjust exercise of governmental power. As said by Mr. Justice Brown in Bybee v. Oregon & California R. R. Co., supra, the legislative act did not avoid the grant upon the nonperformance of a condition subsequent. But it fixed a time for the expiration of the charter, and when that time arrived the corporation lost its power to act or to exist. And I may add that it is a well-settled general rule that a corporation cannot attack the constitutionality of statutes existing at the time of its creation, to which it is made subject. Grand Rapids & Indiana Ry. Co. v. Osborn, 193 U. S. 17, 29, 24 Sup. Ct. 310, 48 L. Ed. 598; 7

R. C. L. 614. And if a corporation is estopped, its board of directors is equally estopped. In my opinion, the provision authorizing the Governor to declare the charter repealed does not violate the Fourteenth Amendment.

This brings me to inquire whether the plaintiff, having contracted with the Crosthwaite & Cannon Company as a corporation, can now be heard to allege that it was not a corporation at the time of the making of the contract. If this must be answered in the negative, the complaint was properly dismissed. The District Judge appears to have been under the impression that the plaintiff could not deny the corporate existence. He says:

"The statement so often made that those dealing with a de facto corporation are estopped to deny its existence is inaccurate for no case of genuine estoppel exists; but it is established by an overwhelming weight of authority that, where persons attempting to exercise corporate authority have taken bona fide steps to organize, those contracting with them must rely upon the corporate responsibility and not upon that of individuals with whom they never intended to contract. The validity of the exercise of corporate functions is a matter for the state, and cannot be questioned by others."

Now it is undoubtedly true that corporations which are not corporations de jure, but are corporations de facto, are liable on contracts into which they enter, and that the courts on grounds of public policy will not allow the question to be raised between the corporation and private parties as to whether the corporation was rightfully in existence. But to make this principle applicable the corporation must be a de facto corporation. We think it clear that a corporation which continues to do business after its charter has been repealed cannot be regarded as a corporation de facto. In order to constitute a de facto corporation there must be at least an organization under some existing charter or law, and such organization must be in good faith; and when the charter or law has been repealed upon which existence depended, there can be neither existing law nor good faith to support the claim that it is a de facto organization.

In Clark and Marshall on Private Corporations, vol. 1, p. 247, it is laid down that a corporation cannot after the expiration of its charter be a corporation, either de jure or de facto, and thereafter its rights to exercise corporate powers may be questioned collaterally. And see Supreme Lodge Knights of Pythias v. Weller, 93 Va. 605, 25 S. E. 891; Sturges v. Vanderbilt, 73 N. Y. 384; Marysville Ins. Co. v. Munson, 44 Kan. 491, 24 Pac. 977; Asheville Division No. 15, Sons of Temperance, v. Aston, 92 N. C. 578; White v. Campbell, 5 Humph. (Tenn.) 38; Guaga Iron Co. v. Dawson, 4 Blackf. (Ind.) 202. See, also, Cook on Corporations, vol. 2, p. 1964, note 1.

I may in passing note that the American doctrine that there may, under any circumstances, be de facto corporations, has never received recognition in England. See Machen on Corporations, vol. 1, § 284. The doctrine in this country rests, not upon the principle of estoppel, but on that of public policy, which is thought to prohibit the right of any one but the state to annul corporate acts because of some technical flaw in incorporation proceedings. To hold otherwise would impose great hardship upon corporations.

Then there is the doctrine of estoppel. It is said that one who deals with a corporation as such is estopped to deny corporate existence, and that the plaintiff dealt with the Crosthwaite & Cannon Company as a corporation. In reply it is to be said that the doctrine of estoppel is based on equitable grounds. The doctrine is to be applied only where there are equitable reasons for applying it. Clark on Corporations (3d Ed.) p. 118. If a person deals with a body as a corporation, which holds itself out as such, and which he believes to be a corporation, and he borrows money or purchases goods from it, to allow him, when sued by it, to deny its corporate existence in order to escape liability, would be so contrary to equity that no court would recognize it as a defense. But it is another matter when it is invoked to relieve from liability persons who have wrongfully held themselves out as the agents of a nonexistent corporation. To apply the doctrine to such a state of facts is not equitable, and is contrary to public policy. An equitable estoppel operates only in favor of him who has been misled to his injury, and he alone can set it up. Ketcham v. Duncan, 96 U. S. 659, 24 L. Ed. 868; Strong v. Ellsworth, 26 Vt. 366. The defendants who invoke the doctrine in this case have not been misled. They are the ones who misled the plaintiffs. The plaintiffs did not mislead them.

After the charter of Crosthwaite & Cannon Company was repealed, the directors held out the corporation as still in existence and entered into contracts in its name. The allegation of the complaint is that after the repeal of the charter, and until March 5, 1918, the defendants allowed "themselves to be made directors, and to be held out to the public as such, and the business of said company to be carried on under their authority and management as such directors."

Where persons hold themselves out as a corporation and contract as such, without having acquired even a de facto corporate existence, they are held by most courts liable as partners, if the facts are not such as to work an estoppel to deny corporate existence. This rule is supported by the weight of authority. See Machen on Corporations, vol. 1, § 293. And in Wonderly v. Booth, 36 N. J. Law, 250 (1873), the directors were in such a case held liable as partners. That case is decisive of the question of the liability of the directors of this New Jersey corporation, the defendants in this case, unless circumstances next to be considered relieve them of their personal liability. In that case, as in this, the so-called corporation was neither de jure nor de facto. A fire insurance company was by its charter authorized to be established at Trenton, but it in fact established itself at Jersey City, and it issued a policy of insurance on property in the state of Pennsylvania. The court held that this amounted to a fraud on the act, and that the corporation had no existence, either de facto or de jure. The court declared that there were two principles of law which justified holding the two defendants who were directors personally liable. "One is," said the court—

"that if an agent contracts, although as agent without a legally responsible principal to whom resort may be had, the law presumes that he contracts on his personal responsibility, and intends to bind himself, and so holds him, for in no other way could the contract have any validity. Story on Agency, §§ 280, 281, 282; 2 Kent, Com. 630; Dinlap's Paley on Agency, 374; Kelner v.

Baxter, L. R. 2 C. P. 174; Furnivall v. Coombes, 5 M. & G. 736; Bay v. Cook, 2 Zab. [22 N. J. Law] 343. * * * The other principle is the familiar one that, when one of two innocent parties must suffer by the fraud of a third, he who gave the occasion for the fraud or the means of credit should bear the loss. * * * In England, when a joint-stock company is in the preliminary stages of formation, before an act of incorporation is had, or complete registration effected under the companies clauses acts, and where there is a pre-liminary board of directors, those who have consented to become directors, or knowingly allowed themselves to be held out to the world as directors, are responsible, as principals or partners, for all contracts, express or implied, within the scope of the business of the direction. Fox v. Clifton, 9 Bing. 115; Maddick v. Marshall, 16 C. B. (N. S.) 387; s. c. in Exch., 17 C. B. (N. S.) 828; Collingwood v. Berkeley, 15 C. B. (N. S.) 145; Bell v. Francis, 9 C. & P. 66; Collyer on Part. § 1086. The liability is that of partners, and the doctrine of these cases, as they stand, is applicable to this kind of an operation and all other kindred schemes of speculation, adventure, or fraud."

I come now, in conclusion, to consider what effect the reinstatement of the corporation by the Governor's second proclamation had in releasing the directors from this personal liability which they incurred by what they did. On that question I find myself wholly unable to agree with the conclusion reached by my Associates. The provision in the statute relating to reinstatement is found in the margin.[1] The Legislature by this statute empowered the Governor to reinstate a corporation not at the time in existence.

In England by the common law corporations could be created by a charter granted by the crown or by an act of Parliament. In this country corporations are not created by the executive, but by the legislative, department of the government. In England power to create corporations can be delegated, and has been. Under our constitutional system power conferred upon the Legislature cannot be delegated by that department to some other. Where the sovereign power has located the authority there it must remain. Delegata potestas non potest delegari. A general power to confer corporate franchises cannot be delegated. It is, however, a well-established principle that where the Legislature has enacted that corporations may be formed upon compliance with certain conditions, it is no objection that ministerial duties, such as the issuing of a certificate or charter are to be performed by some officer before the incorporation takes effect. See Morawetz on Corporations, vol. 1, sec. 15; Re New York Elevated R. R. Co., 70

[1] "7. If the charter of any corporation organized under any law of this state shall hereafter become or shall have heretofore become inoperative or void by proclamation of the Governor or by operation of law, for nonpayment of taxes, the Governor, by and with the advice of the Attorney General, may, upon payment by said corporation to the secretary of state of such sum in lieu of taxes and penalties as to them may seem reasonable, but in no case to be less than the fees required as upon the filing of the original certificate of incorporation, permit such corporation to be reinstated and entitled to all its franchises and privileges, and upon such payment as aforesaid the secretary of state shall issue his certificate entitling such corporation to continue it said business and its said franchises: Provided, however, that the provisions of this section shall in no wise apply to any gas, electric light, telephone * * * company: * * * And provided further, that nothing in this section contained shall relieve any such corporation from the penalty of forfeiture of its franchises in case of failure to pay future taxes imposed under the act. * * *" Laws of New Jersey 1905, p. 511.

N. Y. 327, 343. The act of the New Jersey Legislature in authorizing the Governor on certain specified conditions to "re-instate" corporations previously created by the Legislature devolves upon him a merely ministerial duty. Corporations so reinstated derive their powers from the Legislature and not from the Governor. He simply performs an administrative or ministerial act in carrying into effect and applying a law enacted by the Legislature. In doing this he is not enacting a law or creating a corporation and defining its powers. The act is not unconstitutional—as involving a delegation of legislative power.

The power of the Governor in the matter is derived solely from the provision already cited. It does not expressly authorize a reinstatement nunc pro tunc and it does not legalize and make effective all or any transactions and contracts made in the name of the corporation after its existence was terminated. There is nothing in the act which authorizes reinstatement as of the date when its charter was repealed. The proclamation of the Governor reinstating the corporation is not in the record. If that proclamation contains anything more than the statute provides for it is to that extent of no validity and is to be disregarded.

In the opinion below the District Judge said: "The reinstatement of the corporate franchise by the Governor could not deprive the plaintiff of a cause of action against the individual defendants if he ever acquired one which was not conditional upon reinstatement and thus destroy vested rights." In his opinion persons contracting under the circumstances existing in this case contract under an agreement implied by law that a corporate liability may be substituted by a reinstatement of the corporate franchises for the personal liability of the directors, and reinstatement works a novation which is a defense to individual liability.

I am unable to accept this conclusion. I find nothing whatever in the act which indicates any intention that any contract made in the corporate name to any one after the repeal of the charter is to be assumed by the corporation after it is reinstated, or that any one who enters into such a contract does so with any such understanding. So far is the act from assuming that such contracts will be made which may later become valid by reinstatement of the corporation that the statute contains a provision found in the margin which expressly imposes a criminal liability upon directors who assume to make such contracts.[2]

Novation is the substitution by mutual agreement of one debtor or of one creditor for another. It extinguishes the old obligation and substitutes another in its place. It involves a new contractual relation. It implies a prior valid obligation, and a subsequent agreement of all parties to a new contract. In this case there was but one agree-

[2] "Any person or persons who shall exercise or attempt to exercise any powers under the charter of any such corporation after the issuing of such proclamation shall be deemed guilty of a misdemeanor, and shall be punished by imprisonment not exceeding one year, or a fine not exceeding one thousand dollars, or both, in the discretion of the court." Laws of New Jersey 1905, p. 509, § 4.

ment; no new contract was ever made. A novation involves a second contract between three or more parties, whereby a debtor, in consideration of being discharged from his liability to his original creditor contracts a new obligation in favor of a new creditor or whereby a creditor in consideration of the promise of a new debtor to pay the debt releases the original debtor from his obligations. In the Civil Law novation took place only when the contracting parties expressly disclosed their intention. Sherman's Roman Law in the Modern World, vol. 2, p. 306. Under our law novation may be inferred from circumstances without proof of express agreement. In re Dixon (C. C.) 13 Fed. 109; Hard v. Burton, 62 Vt. 314, 20 Atl. 269. But there are no circumstances here from which it can be inferred. In order that one liability may be replaced by another, by agreement, it is essential that the person in whom the correlative right resides should show by some act of his own that he accedes to the substitution. Barnes v. Boyers, 34 W. Va. 303, 307, 12 S. E. 708; Jones v. Austin, 26 Ind. App. 399, 405, 59 N. E. 1082. A novation exists if the creditor accepts the new debtor's promise to perform, or the performance of it, and not the promise itself. In this case the plaintiff accepted neither, and neither has ever been offered, so far as this record discloses. The party alleging a novation must prove it. Hard v. Burton, supra. It has not been proven in this case.

My Associates think that the reinstating proclamation completely validates any contract which the former directors of the extinguished corporation may have entered into after the charter was forfeited and prior to the reincorporation. In this conclusion I certainly do not concur. It is impossible to reinstate a corporation which has gone out of existence and ceased to be under a charter which the state has declared to be void except by reincorporation. The second proclamation reincorporated the old corporation; the Governor being authorized to perform the ministerial duty of "reinstatement" upon the payment of the back taxes. In the performance of that duty the Governor is not clothed with any discretion, and he performs an administrative act which it was within the right of the Legislature to authorize. Thereafter the revived or reinstated corporation became possessed of all its former franchises as if the charter had never been repealed. But it is a non sequitur that contracts during the period of its nonexistence, and which the law made it a penal offense for the directors to enter into, ipso facto become valid and binding on the corporation the moment the corporation is revived or reinstated or reincorporated, by the second proclamation. The statute plainly does not say so, and it plainly does not contemplate that any contracts shall be made in the name of the corporation after the first proclamation issues; and a sound public policy, it would seem to me, requires that directors who, without authority and in defiance of a penal statute forbidding it, presume to continue to make contracts in the name of their nonexistent corporation, should not be relieved against the personal liability they thereby incurred. If A. subscribes to the stock of B. corporation, not then in existence, when B. corporation comes into existence, it cannot hold A. on his subscription, because it was not in existence

when the subscription was made. And if A. contracts with the directors of B. corporation, which is not at the time in existence, but which it is supposed may possibly subsequently come into existence, the contract is not binding upon the corporation if it later does come into existence, but does no act which recognizes in any way the contract previously made in its name without any authority whatsoever from it.

I am unable to believe that, when the Legislature made it a criminal offense for the directors of an extinguished corporation to enter thereafter into a contract in the name of such corporation, it nevertheless contemplated that such contracts would be made, and intended that when made they should become valid obligations of the corporation itself in case it should happen to be "reinstated.", And it is well to remember that "reinstated" means under the circumstances nothing less than "reincorporated." The doctrine advanced by my Associates would seem to me more plausible if the statute, instead of making the corporation void, had simply suspended its right to do business during the period of its default in the payment of its taxes. But it seems wholly inapplicable to such a statute as the one now under consideration. To impose upon a corporation a contract made in its name when it was not in existence, the legislative intent certainly should be unmistakable. No such intent can be spelled out of a provision which simply says that the corporation may be reinstated with the same powers as before. The reinstatement of a corporation does not relieve directors either from a criminal or a civil liability incurred by the making of a contract in violation of the terms of the statute.

I think the complaint states a good cause of action.